COMMONWEALTH vs. COREY RAMOS.

No. 04-P-692.

Hampden. November 9, 2005. - June 16, 2006.

Present: ARMSTRONG, C.J., SMITH, & MILLS, JJ.

*Practice, Criminal,* Assistance of counsel, New trial, Argument by prosecutor, Instructions to jury. *Constitutional Law,* Assistance of counsel. *Homicide. Self-Defense. Evidence,* Self-defense.

In the circumstances of a direct appeal of a criminal case, this court concluded that the proper mechanism for advancing the defendant's ineffective assistance of counsel claim, made on the record alone, was through a motion for a new trial. [551-553]

The prosecutor's remarks during the closing argument of a murder trial, while emphatic, did not exceed the permissible bounds of closing argument. [553-554]

Where the evidence in a murder case was insufficient to support the defendant's self-defense claim, the trial judge did not abuse his discretion by refusing to submit the case to the jury on theories of self-defense and use of excessive force in self-defense. [554-555]

INDICTMENT found and returned in the Superior Court Department on January 2, 2002.

The case was tried before *Thomas J. Curley, Jr.,* J.

*Terry Scott Nagel* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. A jury convicted the defendant of murder in the second degree (G. L. c. 265, § 1), carrying a dangerous weapon (G. L. c. 269, § 10[b]), and carrying a dangerous weapon on school grounds (G. L. c. 269, § 10[j]). He challenges only his murder conviction, claiming that reversal is warranted because (1) defense counsel rendered ineffective assistance by promising the jury, but never calling, a psychologist to testify as to the defendant's state of mind; (2) portions of the

prosecutor's closing argument were improper; and (3) the trial judge abused his discretion by refusing to submit to the jury theories of self-defense and use of excessive force in self-defense.

1. *Background.* The jury could have found the following facts. On December 5, 2001, the defendant stabbed the victim, Theodore Brown, during an altercation at Springfield High School. The defendant, seventeen years old at the time of the incident, was a student at the school. Brown was employed by the school as an outreach counselor.

One of Brown's job responsibilities was to monitor the hallways between classes, and he was authorized to enforce violations of the school's rules and procedures. On the day in question, the defendant was wearing a hood, a violation of the school's rules prohibiting head-wear. Despite Brown's many requests to remove the hood, the defendant failed to comply.

Brown persisted, and as the defendant was entering a classroom, the defendant turned around, put his hands up, and said to Brown, "People are getting in my face all day. If you get in my face again, I'm going to bust you up." Brown smiled and said something to the effect of, "[W]e'll see about that." Brown and the defendant were close when the argument turned physical. After feints by each, the defendant struck the first blow. The ensuing fight reached a point where the defendant was bent over and Brown was striking the defendant's back, neck, and head with the bottom (fleshy) part of his right fist. The defendant responded by striking Brown in the "stomach" or "mid-section." The fight then stopped.

Brown had blood stains on his shirt following the altercation. He told a fellow teacher that he had been stabbed and uttered the name "Curtis Ramos." Brown stopped breathing before emergency personnel arrived at the school. An autopsy concluded that Brown died from multiple stab wounds. An examination of Brown's body showed eight stab wounds in all. Seven of these wounds were to his chest and abdomen, and one wound was to his right hand.

Shortly after the encounter, members of the Springfield police department located the defendant near the school. In a written statement signed at the police station and later put in evidence,

the defendant admitted stabbing Brown while Brown was hitting him. The defendant acknowledged that the altercation began over the hood, but claimed that Brown was the instigator. According to the defendant, Brown "squared up" first and threw the first punch. The defendant said that he did not want to kill Brown, and that he only "wanted [Brown] to stop bothering [him]."

2. *Ineffective assistance of counsel.* At a pretrial hearing held less than a week before trial, the trial judge rejected, without prejudice, the Commonwealth's motion for admission of prior bad act evidence, most importantly a 1999 incident where the defendant was charged as a juvenile for stabbing his mother. The judge indicated that he was inclined to preclude the Commonwealth from introducing this evidence in its direct case, but he left open the possibility that the prosecutor would be permitted to use the 1999 stabbing to cross-examine the defendant's expert witness, a psychologist. The Commonwealth had argued that the psychologist revealed a potential bias by diagnosing the defendant with posttraumatic stress disorder based only on their initial meeting and before the psychologist sufficiently explored the defendant's background, particularly the 1999 stabbing. The judge stated that "the Commonwealth's general argument commends itself to me" on the bias issue, but he reserved his ruling on whether the 1999 stabbing could be used for cross-examination for when the psychologist was called to testify. He added, "Maybe we'll send the jury home some afternoon and we'll voir dire her on something like that."

At trial, the defendant's attorney told the jury during his opening statement that they would hear from a psychologist about the defendant's state of mind at the time of the stabbing. Defense counsel said that the psychologist would testify about abuse the defendant suffered as a child, "post-traumatic stress syndrome," and how the defendant "didn't have the capacity to pre-meditate, to intend to kill."

Before the start of the third day of testimony, defense counsel sought an advance ruling from the judge regarding whether the Commonwealth would be permitted to use the 1999 stabbing to cross-examine the psychologist. The judge responded, as he did at the pretrial hearing, that he could not provide such a ruling in advance of hearing the psychologist's trial testimony because

some of that testimony could permit the Commonwealth to inquire about the 1999 incident. Unwilling to risk the jury being exposed to the 1999 stabbing, defense counsel informed the court that he would not call his expert witness. The psychologist was never called to testify.

The gist of the defendant's argument is that his attorney was under no obligation to mention his witnesses and their proposed testimony during the opening statement and that he should not have made reference to the psychologist given the uncertainty over the admissibility of the previous stabbing. He also points to defense counsel's failure to press for a voir dire of the psychologist before making the momentous decision not to call her, particularly since the judge had indicated a willingness to conduct such an examination when the issue was raised during the pretrial hearing. Citing to *Anderson* v. *Butler*, 858 F.2d 16 (1st Cir. 1988), the defendant contends that the "broken promise" left the jury to speculate about why the psychologist never testified and could have caused jurors to draw a negative inference.[1]

To prove ineffective assistance of counsel, a defendant is required to show that the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer" and that this deficiency deprived the defendant of a "substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). "A defense counsel's strategic decisions do not amount to ineffective assistance of counsel unless they are 'manifestly unreasonable.' " *Commonwealth* v. *Bousquet*, 407 Mass. 854, 863-864 (1990), quoting from *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). The failure to call a witness that counsel promised in the opening statement may in some cases rise to the level of ineffective assistance of

---

[1]In *Anderson* v. *Butler*, 858 F.2d at 17, defense counsel told the jury that two doctors would testify about the defendant's psychological state. Defense counsel then rested without calling the experts. *Ibid.* The court noted: "Two members of this panel have long held the opinion that little is more damaging than to fail to produce important evidence that had been promised in an opening. . . . The first thing that the ultimately disappointed jurors would believe, in the absence of some other explanation, would be that the doctors were unwilling, viz., unable, to live up to their billing. This they would not forget." *Ibid.*

counsel, but it is by no means an automatic result. See *Commonwealth* v. *Duran*, 435 Mass. 97, 109 (2001); *Commonwealth* v. *McMahon*, 443 Mass. 409, 425 (2005).

We are not prepared to conclude on this record that there was no competent strategic reason underlying defense counsel's decision to speak of the psychologist's testimony prior to the judge's ruling on the admissibility of the prior bad acts. It is well understood among litigators that an opening statement can be critical in preventing a jury from forming a one-sided view at the trial's outset. See 75A Am. Jur. 2d Trial § 513, at 90 (1991) ("Many experienced trial lawyers contend, and the available empirical jury studies tend to confirm, that an opening statement is frequently the most critical stage in the trial of a lawsuit, as here the jury forms its first and often lasting impression of the case"). See also *Maleh* v. *Florida E. Coast Properties, Inc.*, 491 So. 2d 290, 291 (Fla. Dist. Ct. App. 1986) ("Unless one takes the view that an opening statement to the jury is nothing more than a bland, bare-bones overview of the case with no opportunity to delve into the critical details of the forthcoming testimony," the judge's five-minute restriction on the opening statement denied the plaintiff an opportunity to provide effective opening remarks). The defendant's trial counsel may also have formed the view that the defendant had little chance of a favorable outcome unless the psychologist testified *and* the judge ruled against permitting the Commonwealth to introduce evidence of the earlier stabbing.

While we could speculate about defense counsel's rationale for proceeding the way he did, the proper mechanism for advancing the defendant's ineffective assistance claim is through a motion for a new trial, which provides the opportunity for an evidentiary hearing and findings related to the trial attorney's performance. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 810-811 (2006); *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107-108 (1999). In this case, the defendant claims ineffective assistance of counsel for the first time on direct appeal. "[A]n ineffective assistance of counsel challenge made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant

viewing the case with hindsight." *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). See *Commonwealth* v. *Zinser*, 446 Mass. at 809 n.2 ("The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional, and our case law strongly disfavors raising ineffective assistance claims on direct appeal"). As in *Commonwealth* v. *Carney*, 31 Mass. App. Ct. 250, 258-259 (1991), the inquiry here into "whether [defense] counsel's performance was constitutionally deficient and . . . whether any deficiency revealed prejudiced the outcome of the trial" is most appropriately left to the trial judge.

In light of the contested nature of this issue and the unavailability of the trial judge to hear a motion for a new trial, affidavits may not be sufficient to resolve the defendant's claim of ineffective assistance of counsel. See *Commonwealth* v. *Brookins*, 416 Mass. 97, 104 (1993). Such a motion would necessarily involve fact finding that is probably best done through an evidentiary hearing. See *ibid.*

3. *Closing argument.* We disagree with the defendant's contention that a portion of the prosecutor's closing argument improperly implied that the jury would have to answer for their verdict.[2] The prosecutor was arguing that the jury should find that the evidence supported a verdict of murder with extreme atrocity and cruelty. He referenced several of the factors that a jury may weigh in deciding whether a murder can be classified in this manner. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983) (factors include "extent of physical injuries, number of blows, manner and force with which delivered, [and] instru-

---

[2]Specifically, the defendant cites to the following remarks: "Finally, I want to .speak briefly to you about extreme atrocity. How atrocious was this crime? In the weeks and months ahead, you may be asked to describe what case was that that you were on as a juror? And you're likely to summarize it by saying, 'It was the one where the kid came to school with a knife and stabbed the counselor to death eight times because he wouldn't take down his hood.' And you will have accurately summarized the heart of this case, student carrying a weapon to a public school, a weapon designed to kill, who, when asked to follow a simple school rule, chose to react with anger and violence, not once, not twice, but eight times.

"That conduct was extremely atrocious on December 5th, 2001. It is extremely atrocious today. It will be extremely atrocious tomorrow if you, the jury, as the conscious [*sic*] of the community, say so. Thank you very much."

ment employed"). The defendant acknowledges that the phrase "conscience of the community" is not improper when the jury is asked to determine whether a killing was done with extreme atrocity or cruelty. See *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547 (1993); *Commonwealth* v. *Raymond*, 424 Mass. 382, 391 (1997); *Commonwealth* v. *Torres*, 437 Mass. 460, 465 (2002). The prosecutor's remarks, while emphatic, did not exceed the permissible bounds of closing argument.

4. *Self-defense instructions.* The defendant argues that the trial judge abused his discretion by refusing to submit the case to the jury on theories of self-defense and use of excessive force in self-defense.

A judge must instruct on self-defense if the evidence, taken in the light most favorable to the defendant, raises a reasonable doubt on the issue. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980); *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998). Whether the evidence is sufficient to reach this threshold "is often a complex determination[,] and . . . a trial judge should 'err on the side of caution in determining that self-defense has been raised sufficiently to warrant an instruction.' " *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 701 (2002), quoting from *Commonwealth* v. *Toon*, 55 Mass. App. Ct. 642, 644 (2002).

The evidence here was insufficient to support the defendant's self-defense claim. The description that both the Commonwealth's and the defendant's witnesses provided of the fight fails to establish that the defendant held a reasonable belief that he was in imminent danger of death or serious bodily harm at the time of the stabbing. This alone is fatal to his claim.[3] See *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 645.

At most, the defendant was placed in a vulnerable position because of Brown's blows to his head, neck, and back while he was bent over. However, there was no evidence in the record

---

[3]Accordingly, we need not analyze the remaining factors considered in a self-defense claim: whether the defendant actually believed he faced imminent death or serious bodily harm, whether he "availed himself of all proper means to avoid physical combat before resorting to the use of deadly force," and whether he "used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Harrington*, 379 Mass. at 450.

that Brown used anything other than his fists; not a single witness stated that Brown had even used his knuckles in the fight. Witnesses described Brown striking the defendant with the "bottom of his fists," using "both of his hands," or "pounding his fists." There was no indication that Brown was hitting the defendant with a degree of force likely to cause serious injury or bodily harm. When apprehended by the police a short time after the fight, the defendant had no visible injuries to his face or back. The evidence did not support a hypothesis that a reasonable person in the defendant's position would have believed he was in such danger as justified using deadly force. The evidence fell short of suggesting the requisite objective fear to support the defendant's self-defense claim.[4]

Since the defendant was not entitled to a self-defense instruction concerning his use of deadly force, the judge did not abuse his discretion in declining to instruct on use of excessive force in self-defense. See *Commonwealth* v. *Walker*, 443 Mass. 213, 217-218 (2005). There was no error arising from the judge's refusal to submit to the jury theories of self-defense and use of excessive force in self-defense.

For the reasons stated above, the defendant on direct appeal cannot prevail on his claim of ineffective assistance of counsel. To advance that claim he must proceed in the trial court by way of a motion for a new trial.

*Judgment affirmed.*

---

[4]This is true even if the jury were to believe the defendant's statement to the police that Brown instigated the fight and landed the first blow. A violation of the laws prohibiting corporal punishment and physical restraints to enforce school rules (see G. L. c. 71, § 37G; 603 Code Mass. Regs. § 46.04[3][b] [2001]) obviously does not justify stabbing the violator.