NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-612

JAMES WRIGHT, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2007 a Superior Court jury found that the petitioner was a sexually dangerous person, and he was civilly committed to the Massachusetts Treatment Center.  Ten years later he filed a petition for examination and discharge under G. L. c. 123A, § 9, but he was again civilly committed after another jury found that he remained a sexually dangerous person.  The petitioner appeals, arguing that the trial judge abused his discretion by admitting irrelevant and unfairly prejudicial evidence and that his trial counsel was ineffective.  We affirm.

Background.  The petitioner began sexually offending against children when he was sixteen years old, often grooming his victims with promises of money or job opportunities.  In 1985 he was adjudicated delinquent of rape of a child after he lured an eleven year old boy into the woods and sexually assaulted him.  In 1988 the petitioner was charged with additional sexual assaults against a twelve year old boy.  While

those charges were dismissed, the petitioner later admitted that he had fondled the boy and performed oral sex on him.

In 1992 the petitioner pleaded guilty to assault by means of a dangerous weapon and threatening to commit a crime after he pulled a knife on a fourteen year old boy who had refused to remove his clothes to be photographed. In 1994, a few months after his release from incarceration, the petitioner tried to lure two boys, aged ten and eleven, to a bus station. After the police arrested the petitioner and executed a search warrant, they recovered several items from the bags that the petitioner had with him at the bus station, including, as relevant to this appeal, two books titled "Driven to Kill" and "Killer Clown." Police also recovered photographs of clothed children, fifteen pairs of boys' underwear, pornographic videotapes, a "Garfield" writing pad, and an "All Star Dad" shirt. The petitioner pleaded guilty to attempted kidnapping as a result of this incident.

The petitioner was released on probation in 1999, but he was reincarcerated a few months later after he was "picked up . . . for following a 10-year-old boy." Prior to the petitioner's release in 2001, the Commonwealth petitioned to commit him as a sexually dangerous person. An order of temporary commitment issued, but the petition was eventually

dismissed.  In 2002 the petitioner was released from his temporary commitment.

A few months later, the petitioner befriended a seventeen year old boy and proceeded to groom him over the next several weeks before sexually assaulting him.  The boy awoke to the petitioner kissing his neck and face, sucking his nipple, and grabbing and rubbing his buttocks.  When the boy jumped up and asked what he was doing, the petitioner became angry, screaming in the boy's face.  Based on this incident, the petitioner was convicted of indecent assault and battery on a person fourteen years of age or older and received a committed sentence.  Before his release the Commonwealth petitioned again to commit him as a sexually dangerous person.  After an order of temporary commitment issued, the petitioner was adjudicated sexually dangerous in March 2007 and has remained committed since that date.

Discussion.  1. Evidentiary challenge.  Prior to trial the petitioner moved in limine to preclude the Commonwealth "from mentioning, in either questioning or testimony," the "Driven to Kill" and "Killer Clown" books recovered in connection with the 1994 attempted kidnapping.  At the hearing on the motion, the petitioner's counsel argued that the titles were inflammatory and invited the jury to speculate about the content of the books.  But when the judge asked whether the books would be

3

probative "towards a determination of the [petitioner's] dangerousness" if they were "about serial killers who lure and kill children," counsel responded, "If the Commonwealth can make that showing, I think they are entitled to it." The Commonwealth then pointed out at a subsequent hearing that a 2019 comprehensive evaluation contained an acknowledgment by the petitioner that one of the books was about John Wayne Gacy.[1] In response the petitioner's counsel stated, "[I]t's admissible" and "I feel like I'm defeated on that." Stating that he agreed, the judge denied the petitioner's motion.

Despite the concessions he made before the judge, the petitioner argues on appeal that the judge abused his discretion by admitting evidence about the books, which the petitioner now says was not relevant to the question of dangerousness and was more prejudicial than probative. Because the petitioner did not preserve the issue at trial,[2] we review to determine whether any error created a substantial risk of a miscarriage of justice. See R.B., petitioner, 479 Mass. 712, 717-718 (2018).

---

[1] Specifically, the comprehensive evaluation states that the petitioner "understood" that the book "Killer Clown" was "about John Wayne Gacy (who sodomized, tortured, and killed 33 young men and boys)."

[2] Although the petitioner stated during trial that he was "renew[ing] [his] objection to . . . the book titles," he did not specify the grounds for his objection. The issue is therefore unpreserved. See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324 n.5 (2023).

4

Assuming, without deciding, that there was error, we conclude that it did not create a substantial risk of a miscarriage of justice. A single witness, a qualified examiner, referred to the books in his testimony, in response to a question about the items that the police recovered after executing the search warrant in 1994. The entirety of that testimony was as follows: "And there were two books as it related to killers. One was called 'Killer Clown,' that was about John Wayne Gacy. And then there was another book, titled 'Driven to Kill,' that was supposed to be about Pam Smart." The remaining five mentions of the books were similarly brief and buried in the written reports, which comprised almost four hundred pages of exhibits. We note that the petitioner did not move to redact these references from the reports.

Compared to the fleeting nature of the references to the books, the Commonwealth offered overwhelming evidence, summarized above, that the petitioner committed repetitive acts of sexual misconduct against boys, despite his frequent arrests and incarceration. The Commonwealth also offered evidence that the petitioner was resistant to sex offender treatment and incurred disciplinary reports while incarcerated, including for writing letters to boys and to schools, "apparently seek[ing] [to] gain information about schools and children." Multiple expert witnesses offered by the Commonwealth, including the two

qualified examiners, opined that the petitioner's sexual misconduct was compulsive and that he was likely to reoffend. The Commonwealth's closing argument focused on this evidence and did not mention the books.

Given the strength of the Commonwealth's case, and its limited use of the contested evidence, we do not "have a serious doubt that the result of the trial might have been different had the [alleged] error not been made." Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999). Accordingly, there was no substantial risk of a miscarriage of justice. See R.B., petitioner, 479 Mass. at 719 (admission of psychological report did not create substantial risk of miscarriage of justice where "the report did not figure prominently in the testimony or report of either qualified examiner" and "all three experts testified that the petitioner remains sexually dangerous, based on his history of sexual offenses and his mental health diagnoses, as well as his lack of progress in treatment programs and his disciplinary record while incarcerated"). We add that we would reach the same result even were we to apply the prejudicial error standard applicable to preserved errors. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) ("An error

is not prejudicial if it 'did not influence the jury, or had but very slight effect'").

2. Ineffective assistance. The petitioner raises his allegations of ineffective assistance of counsel on direct appeal rather than through "the preferred method" of a motion for a new trial. Commonwealth v. Zinser, 446 Mass. 807, 810 (2006). An ineffective assistance claim "made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). We can resolve such a claim only in exceptional circumstances when the ineffectiveness "appears indisputably on the trial record" (citation omitted). Zinser, supra at 811.

That is not the case here. While the petitioner claims that his trial counsel was ineffective on several grounds,[3] we cannot determine on the record before us whether the alleged errors resulted from counsel's strategic decisions and, if so, whether those decisions were "manifestly unreasonable" and

---

[3] Specifically, the petitioner argues that trial counsel erred by failing to (1) address misleading testimony elicited from the Commonwealth's expert witnesses, (2) introduce evidence that would have benefited the petitioner, (3) object to questions by the Commonwealth that improperly shifted the burden of proof, and (4) request a limiting instruction regarding the petitioner's criminal record.

7

likely deprived the petitioner of a "substantial ground of defense."  Commonwealth v. Hudson, 446 Mass. 709, 716, 726 (2006).  Thus, on this record, the petitioner has failed to meet his burden of demonstrating that trial counsel was ineffective.  See Commonwealth v. Ramos, 66 Mass. App. Ct. 548, 551-552 (2006).

Judgment affirmed.

By the Court (Wolohojian, Neyman & Shin, JJ.[4]),

Assistant Clerk

Entered:  January 31, 2024.

---

[4] The panelists are listed in order of seniority.