COMMONWEALTH *vs.* JOSEPH P. BENOIT.

No. 91-P-755.

Worcester. December 10, 1991. - February 12, 1992.

Present: ARMSTRONG, JACOBS, & GILLERMAN, JJ.

*Evidence*, Contradiction of witness, Conflicting statements of witness, Impeachment of credibility, Hearsay. *Witness*, Impeachment. *Practice, Criminal*, Instructions to jury.

At the trial of an armed robbery indictment, the judge erred in allowing a certain prosecution witness to testify solely for the purpose of his impeachment by hearsay evidence and, where the hearsay evidence, consisting of an alleged confession of the defendant, was otherwise inadmissible, a new trial was required. [114-117]

COMPLAINTS received and sworn to in the Worcester Division of the District Court Department on October 25, 1989.

On transfer to the Superior Court Department, the cases were tried before *Herbert F. Travers, Jr.*, J.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. Having appealed from convictions of armed robbery and assault and battery, the defendant claims prejudicial error in the admission of certain testimony which the Commonwealth argues was entirely proper under the provisions of G. L. c. 233, § 23.[1]

---

[1]General Laws c. 233, § 23, provides as follows: "The party who produces a witness shall not impeach his credit by evidence of bad character, but may contradict him by other evidence, and may also prove that he has made at other times statements inconsistent with his present testimony; but before proof of such inconsistent statements is given, the circumstances thereof sufficient to designate the particular occasion shall be mentioned to

A jury could have found the following facts. The Commonwealth's principal witness, George Rice, was an assistant manager of a Texaco gasoline station. Rice was responsible for various activities including bank deposits. On September 17, 1989, Rice prepared the deposit of the night's receipts and drove to the Shawmut Bank on West Boylston Street in Worcester. He arrived at approximately 7:35 A.M. Following company protocol, he scanned the area before leaving his car, and then proceeded to the deposit box with the key to the box in his hand. As he was about to gain entrance to the box, a man came from behind him and demanded that he turn over the money bag containing the night's receipts. Rice turned around and saw a man whom he identified as the defendant. Rice hesitated, whereupon the man, brandishing a revolver in one hand and a knife in the other, threatened to shoot and stab Rice unless the bag was handed over. Rice turned over the bag, and the man kicked Rice in the thigh and fled up an embankment, over some railroad tracks, and headed for the Norton Company. Rice followed, hollering for police assistance. The man then emerged from some bushes, climbed over a fence and disappeared. Rice returned to his motor vehicle and went to a nearby fire station where the police were called. The next day Rice went to the Worcester police station, gave the police a statement, and identified a photograph of the defendant from an array of forty-five to sixty photographs. Subsequently, he identified the defendant at a probable cause hearing and in the courtroom at the trial.

After the Commonwealth called a member of the Worcester fire department and a member of the Worcester detective bureau to corroborate Rice's account of events, the Commonwealth informed the court of its intention to call Craig Benoit, the defendant's brother. The prosecutor had previously told the judge, before opening statements, that Craig had told others that the defendant had told Craig that he, the defendant, had committed the crime with a gun and a knife and with another person named Michael Pecek. The prosecu-

the witness, and he shall be asked if he has made such statements, and, if so, shall be allowed to explain them."

tor also told the judge that Craig had said that "his [Craig's] testimony would be [that] . . . he never had a conversation with his brother [the defendant]." The judge replied that he would rule on the issue before the witness was called. When Craig was called, following the testimony of the corroborating witnesses, the judge ruled that he would admit the evidence, and the defendant's objection was duly saved. ·

Other than four preliminary questions to identify Craig and his relationship to the defendant, the entire examination of Craig was limited to questions about an alleged conversation between Craig and his brother about the robbery and another alleged conversation between Craig and one Ray Lareau and others in which Craig allegedly told Lareau and others that the defendant had admitted to Craig that he, the defendant, had robbed Rice with a gun and a knife. Craig denied having any conversation with his brother about the robbery, and he denied having any such conversation with Lareau and others. That, of course, is what the prosecutor had told the judge would happen when Craig took the stand.

Following Craig's testimony, the judge instructed the jury: "All you have is simply a denial by the witness that he said something. And I say [this] to you because you should not consider a denial of something that is in a question as any proof that those things happened."

Lareau was then called by the Commonwealth and, after a few preliminary questions, the prosecutor inquired about his conversation with Craig. The judge interrupted to instruct the jury that apparently the witness was going to testify as to what Craig said on various occasions. The judge then said, "You may or may not decide that it proves he said it. Now, that bears on whether he is a truthful witness or not — Craig Benoit. It doesn't prove that the things happened. Now, you want to keep that distinction in mind." The defendant objected, and he argued that a confession was being introduced "through hearsay basically," and the limiting instruction required a "mental gymnastic" of the jurors "that is impossible for them to perform. It is so prejudicial." The judge replied that he had "every confidence" that the jury

would follow his instructions, and he repeated his limiting instruction to the jury. Lareau then testified that Craig told him that the defendant had told Craig that he and Pecek had committed the crime.

The next witness called by the Commonwealth was a Robert Hemp who, over the defendant's objection, corroborated Lareau's testimony. No further witness was called.

The judge, in his final instructions to the jury, commented at length on the testimony of Craig, Lareau, and Hemp. He said, in summary, "Either way you turn, whether you believe him [Craig] or you don't believe him, he doesn't furnish any evidence, do you see? So, whether you believe him or not, it ends up that he furnishes no testimony in this case because you can't find that even if you believe he was told certain things, that those things are true. You can't use it for that purpose, because you are getting it second and third and fourth hand."

The Commonwealth argues, and with considerable force, relying upon such cases as *Commonwealth* v. *Reddick*, 372 Mass. 460, 463 (1977), *Commonwealth* v. *Cobb*, 379 Mass. 456, 463-465, vacated and remanded on other grounds sub nom. *Massachusetts* v. *Hurley*, 449 U.S. 809 (1980), appeal dismissed, 382 Mass. 690 (1981), and *Commonwealth* v. *Scott*, 408 Mass. 811, 823-825 (1990), that there was no error because c. 233, § 23, expressly permits a party to contradict his own witness by proving that the witness made prior inconsistent statements.[2]

The Commonwealth's argument sweeps too broadly. No Massachusetts decision that the Commonwealth cites, and none that we have found, holds that a witness, who the Commonwealth knows beforehand will provide no probative testimony, may be allowed to testify solely for the purpose of impeachment by hearsay evidence. Indeed, there is an early intimation to the contrary in *Brooks* v. *Weeks*, 121 Mass.

---

[2] In the usual case, the judge gives appropriate limiting instructions to the jury that the prior inconsistent statement is not to be taken as evidence of the truth of the matter asserted in the statement. See, e.g., *Scott, supra* at 824.

433 (1877), a civil case arising under the original version of c. 223, § 23, appearing in St. 1869, c. 425. There the court indicated that the testimony of the plaintiff's witness would not have been admissible if "there was bad faith on the part of the plaintiff in calling the witness; or [if] he was introduced merely for the purpose of contradicting him." *Id.* at 434. Compare *Commonwealth* v. *Gagnon*, 408 Mass. 185, 198 (1990) ("a trial judge has no discretion to permit a witness to appear before a jury for the sole purpose of properly invoking his or her privilege against self-incrimination").

While we have found no later Massachusetts decision that discusses the point, there is an abundance of authority on the issue in the Federal courts. In *United States* v. *Morlang*, 531 F.2d 183 (4th Cir. 1975), a case arising before the adoption of the Federal Rules of Evidence, the court, after noting that prior statements of a witness are merely hearsay, observed that the "introduction of such testimony, even where limited to impeachment, necessarily increases the possibility that a defendant may be convicted on the basis of unsworn evidence, for despite proper instructions to the jury, it is often difficult for them to distinguish between impeachment and substantive evidence." *Id.* at 190. The court reversed the judgment; "the only apparent purpose in calling [the witness] was to get before the jury the alleged statement [the witness] made [to a third party]." *Ibid.* The court added that the "overwhelming weight of authority is . . . that impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Ibid.*

The Federal rule was not changed with the adoption of the Rules of Evidence. Rule 607 provides: "The credibility of a witness may be attacked by any party, including the party calling him." See *United States* v. *Webster*, 734 F.2d 1191 (7th Cir. 1984), where Judge Posner observed, "[I]t would be an abuse of the rule, in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle

distinction between impeachment and substantive evidence — or, if it didn't miss it, would ignore it. The purpose would not be to impeach the witness but to put in hearsay as substantive evidence against the defendant. . . ." *Id.* at 1192. Professor Wright has summarized the decisions in this fashion: "While no Federal court has directly held that damage [to the government's case] and surprise requirements should be read into Rule 607, all the Federal courts which have considered the issue acknowledge that 'impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.' " 27 Wright & Gold, Federal Practice and Procedure: Evidence § 6093, at 498 (quoting from *Morlang, supra*). See *United States* v. *Hogan*, 763 F.2d 697, 702 (5th Cir. 1985) (conviction set aside; the prosecution "may not call a witness it knows to be hostile for the *primary* purpose of eliciting otherwise inadmissible impeachment testimony, for such a scheme merely serves as a subterfuge to avoid the hearsay rule" [emphasis original]).

The fact that the prosecutor in this case disclosed the expected testimony of Craig to the judge beforehand — that Craig would deny the conversation with his brother, Lareau, and others — establishes the absence of bad faith, but does not save the day, for the error is evident and the harm to the defendant was too great. As the judge correctly observed in his instructions to the jury, whether Craig was believed or not, his testimony came to nothing. That was because there was no purpose to Craig's testimony other than to place before the jury the questions the prosecutor put to him[3] to provide the foundation for the admission of his alleged prior inconsistent statements.[4] Thus, by one means or another, the

---

[3]Typical of the questions asked Craig are the following: "Did you have a conversation with your brother with respect to that robbery that occurred on September 17, 1989?" Also: "Did you tell Mr. Lareau that your brother had told you that he had committed this robbery and ran to an awaiting vehicle which Michael Pecek was in?"

[4]Typical of the prior inconsistent statements was the following testimony by Lareau: "At that time Craig Benoit came into the room while we were having this conversation, and he had told me that he had talked to his

prosecution provided the jury with three opportunities to hear that which it was otherwise unable to bring before the jury, the defendant's alleged confession.

As we have previously observed in *Commonwealth* v. *Key*, 21 Mass. App. Ct. 293, 297 (1985), where "the evidence lacked any proper basis for admission, and was strictly irrelevant, there would be error in its admission even if only minor prejudice was generated." Here the prejudice generated was substantial, for the Supreme Judicial Court has recognized that "a defendant's statement is usually 'the key item in the proof of guilt, and certainly one of overpowering weight with the jury.'" *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982), quoting from *Clifton* v. *United States*, 371 F.2d 354, 362 (D.C. Cir. 1966).

The judge's instructions to the jury, while entirely appropriate in the ordinary case, did not "come near purging the error" in this case. *Commonwealth* v. *Key*, *supra* at 298. We have previously stated, in the context of homicide cases, that limiting instructions are inadequate where the danger of prejudice is great and "it is simply unrealistic" to believe that the jury would adhere to the "refined distinctions demanded by the limiting instruction[s]." *Commonwealth* v. *Bond*, 17 Mass. App. Ct. 396, 400 (1984). That rule is equally applicable to this case. See *Commonwealth* v. *Pimental*, 5 Mass. App. Ct. 463, 468 (1977) (serious danger that jury would disregard the limiting instructions and allow the inconsistent statements to be considered as substantive evidence). *Commonwealth* v. *Costello*, 411 Mass. 371 (1991), announced after arguments in this case, provides no authority to the contrary.

*Judgments reversed.*
*Verdicts set aside.*

---

brother Joe, and Joe had told him that he had committed this robbery. And that they were going to do it at an earlier date, but the person had drove a red van, but this person at that time had been accompanied by somebody else, so they put it off until this date that they did it."