COMMONWEALTH *vs.* GERMAINE CARTER. No. 93-P-1658. May 9, 1995. *Witness*, Hostile witness, Impeachment. *Evidence*, Contradiction of witness, Conflicting statements of witness, Hearsay, Impeachment of credibility. *Practice, Criminal*, Comment by prosecutor.

The defendant was convicted of murder in the second degree and unlawful possession of a firearm. The two issues to be decided are: (i) whether, under *Commonwealth* v. *Benoit*, 32 Mass. App. Ct. 111 (1992),[1] the defendant was denied a fair trial because the prosecutor called a hostile wit-

---

[1] In *Benoit* we held that a witness, who the Commonwealth knew beforehand would provide no probative testimony, may not be called to testify solely for the purpose of impeachment by hearsay evidence.

ness and elicited testimony from her relying principally upon her prior inconsistent statement to the police which was prejudicial to one of the defendant's two asserted alibis, and (ii) whether the prosecutor's final argument was so prejudicial to the defendant that there was a substantial risk of a miscarriage of justice. We affirm.

As to the *Benoit* issue: at the voir dire of Furtado, the mother of the defendant's son, the prosecutor requested that she be declared a hostile witness so that he could examine her regarding her alleged prior inconsistent statement concerning the events surrounding the alleged murder. Notwithstanding that *Benoit* was decided February 12, 1992, nine months before the trial of this case, the defendant objected only on the ground that the witness should not be declared hostile; he argued that the prior statement was merely a mistake, and the witness had admitted that to be so. Defendant's counsel then added: "I have no problem in Mr. Coffey [the prosecutor] showing her her statement or playing the statement and showing that she testified or that she made a statement that was somewhat different." The judge, over the defendant's objection, declared the witness hostile, and at the trial the prosecution, without objection by the defendant, used the prior statement in his examination of Furtado.

Unlike *Benoit* in which the defendant lodged a forceful and specific objection to the admissibility of the highly prejudicial hearsay, the defendant in this case stated that he had *no objection* to the use of Furtado's prior inconsistent statement, with the consequence that the claim is not now available to the defendant.[2] See *Commonwealth* v. *Tyree*, 387 Mass 191, 213 (1982) (A defendant "is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to this court on a different ground"); *Commonwealth* v. *Luce*, 399 Mass. 479, 482 (1987) (where there is no objection to the use of a prior inconsistent statement, and no request for a limiting instruction, the statements may be considered as substantive evidence); *Commonwealth* v. *Comtois*, 399 Mass. 668, 674 (1987) ("It is a fundamental principle of appellate review that a prompt objection at trial is a prerequisite to the presentation of an issue for appellate review"); Liacos, Massachusetts Evidence § 3.8.4 (6th ed. 1994).

We add only that there is no suggestion here that the admission of the statement created an injustice to the defendant. See *Commonwealth* v. *De-Castro*, 24 Mass. App. Ct. 937, 939 (1987). In *Benoit* the hearsay was the defendant's purported confession of the crime charged. Here, the hearsay

---

[2]In this case, the *Benoit* issue was first raised in a motion for a new trial, following the entry of the appeal in this court. The appeal was stayed pending the outcome of the motion. The motion was denied, largely on the ground that the issue should have been raised and briefed in the previously filed appeal. The defendant has appealed from the denial of his motion for a new trial, but he does not argue the correctness of that order. Thus we consider the availability of the *Benoit* issue without regard to the disposition of the defendant's motion for a new trial.

statement asserted facts which contradicted the defendant's first alibi —
an alibi he subsequently revoked as not true. Whether or not the first alibi
was true, the defendant's credibility was impeached by the prior statement
of the witness, and thus the introduction of that statement was not irrele-
vant, as in *Benoit*.

As to the prosecutor's closing argument: the defendant made no objec-
tion,[3] foreclosing the possibility of prompt, curative instructions, and sug-
gesting "that the tone, manner, and substance of the now challenged as-
pects of the prosecutor's argument were not unfairly prejudicial."
*Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985). Thus, we need only
"examine the alleged prejudicial statements against the background of the
entire case to determine if a miscarriage of justice has occurred." *Com-
monwealth* v. *Palmariello*, 392 Mass. 126, 133 (1984).

The most serious challenge is to the prosecutor's comments regarding
the witness Mary Wilson (a fictitious name). He said, "Do your remember
Mary Wilson? She was fourteen years when she saw this murder take
place. I had asked her four times to identify the person she saw on the bike
after I refreshed her memory. . . . And do you remember I said look
around the courtroom. You had an opportunity to see her. Do you remem-
ber she stared at that blackboard for five minutes? Do you remember she
stared in the corner, and over there? Do you remember her head and her
eyes when she looked over in this direction? Her head literally dropped.
She was afraid to identify him, ladies and gentlemen. *Use your common
sense. Ask yourself why* . . . . [She could b]arely get her arm up to point
to him." (Emphasis supplied.)

These comments were not merely an exhortation to the jury to use their
common sense in assessing the credibility of the witness; the prosecutor
was suggesting that "common sense" would lead directly to the conclusion
that the defendant had intimidated the witness — without a hint in the
record to support the suggestion. These remarks were plainly improper, see
*United States* v. *Rios*, 611 F.2d 1335 (10th Cir. 1979), and the prosecu-
tor's other remarks, of which the defendant complains (but which we need
not discuss), were of doubtful propriety. Nevertheless, we do not conclude
that the prosecutor's comments, considered separately or in the aggregate,
created a miscarriage of justice.

The judge's instructions to the jury, which were particularly forceful,
timely and specific, corrected the prosecutor's improprieties. See *Common-
wealth* v. *Achorn*, 25 Mass. App. Ct. 247, 250 (1988). Prior to closing
arguments, he instructed the jury "to keep in mind what I told you when
they [the lawyers] made their opening statements. What they say to you in
closing argument is not evidence. It is not to be construed by you to be
evidence. . . *After all, you must anticipate that the lawyers are going to
put the spin on the evidence that they want you to understand, but it's you
who are the final arbiters as to what the evidence and the facts are in the
case*" (emphasis supplied). Again, in his remarks, immediately after clos-

---

[3]Appellate counsel was not trial counsel.

ing arguments, the judge emphasized that the jury "cannot speculate as to what might or might not have been the real facts in this case or allow yourself to be influenced by the popularity or lack of popularity of the crimes here charged. Rather you must confine your deliberations to the evidence and nothing but the evidence. . . ."

Further, the Commonwealth's case was solid. The live issue at the trial was the identification of the shooter. One witness, a young woman, testified to seeing all the events surrounding the shooting, and she identified the defendant as the shooter. A second witness confirmed the defendant's involvement in the events described by the first witness, although she did not witness the actual shooting. A third witness testified that she saw the defendant, who was only a few steps away from the witness, fire six or seven shots at the truck in which the victim was riding, and she saw the victim fall from the truck. The defendant testified; he offered an alibi defense, but admitted that his first detailed alibi, which he had given the police in a tape recorded statement, was false.

Based on our review of the record in this case, see *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992), we conclude that there was no risk of a miscarriage of justice.

*Judgments affirmed.*

*John F. Palmer* for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.