## COMMONWEALTH *vs.* STEVEN BRADFORD HAILEY.

No. 02-P-1387.

Plymouth. December 8, 2003. - October 13, 2004.

Present: ARMSTRONG, C.J., BECK, & CYPHER, JJ.

*Homicide. Joint Enterprise. Evidence,* Prior inconsistent statement, Testimony before grand jury, Joint enterprise. *Witness,* Impeachment.

At a criminal trial, the judge properly allowed a witness's grand jury testimony, which was inconsistent with his testimony at trial, to be admitted in evidence pursuant to the rule announced in *Commonwealth* v. *Daye,* 393 Mass. 55, 73-75 (1984), where the witness had a current memory of the events in question and his testimony contained probative evidence, where defense counsel had ample opportunity to cross-examine him and did, and where there was no merit to the claim that the witness's grand jury testimony was coerced. [252-253]

At the trial of an indictment charging murder in the first degree, the evidence was sufficient to convict the defendant of involuntary manslaughter as a principal, where there was evidence of intent to commit a battery that the defendant knew or should have known could endanger the victim's life and that caused the victim's death. [253-255]

INDICTMENT found and returned in the Superior Court Department on September 27, 1999.

The case was tried before *Richard J. Chin,* J.

*Jeffrey L. Baler* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

BECK, J. On an indictment charging murder in the first degree, a Superior Court jury found the defendant guilty of involuntary manslaughter. The defendant appeals. He claims (1) that the trial judge erred in admitting the testimony of witness Kevin Seaver in violation of the rule of *Commonwealth* v. *Daye,* 393 Mass. 55, 73-75 (1984); and (2) that there was insufficient evidence to support the defendant's conviction as a principal. We affirm the conviction.

*Factual and procedural background.* The jury could have found the following facts. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). In the hours marking the transition from June 11 to June 12, 1999, the defendant and one Lance Cotton assaulted Juan (Miguel) Colon (the victim) in an apartment at 1006 Main Street in Brockton. The defendant started the fight, soon joined by Cotton. The assailants kicked and punched the victim as he lay on the floor. Apparently the victim had recently sold drugs to the defendant and there was "weight missing." (We take this to mean that the defendant thought the victim had delivered less than the defendant had paid for.)

Kevin Seaver, whose apartment was adjacent to the apartment where the beating took place, heard banging, yelling, and screaming through the common wall on two or three occasions over a three or four hour period. Seaver knocked on the door several times in an effort to get them to stop. When the door opened in response, he saw the defendant and Cotton. Someone Seaver did not recognize was lying on the floor. Another witness also tried without success to convince the defendant and Cotton to stop their attack.

By morning, the victim appeared to be barely conscious. Witnesses described the victim as "pretty beaten up," "[b]adly bruised," and "like he had been in a fight." The defendant was seen sitting in a chair right over the victim. The furniture in the apartment was in disarray; some was broken. The defendant used the words "real bad" to describe the beating to his girl friend and instructed her not to tell the police.

The victim was taken to a Brockton hospital that morning. The emergency medical technician noted many bruises to the victim's face and abdomen, a collapsed lung, and multiple contusions to his head, neck, chest, and abdomen. Initially, the victim's condition stabilized. It subsequently deteriorated and he was transferred to Brigham and Women's Hospital in Boston, where he died on July 6, 1999. The cause of death was generalized peritonitis, sepsis, and a torn small bowel, all as a result of blunt abdominal trauma.

An investigation led to indictments of the defendant and Cotton for murder in the first degree. The defendant's case was sent to the jury on alternate theories — individual liability and

joint venture. The jury returned a general verdict of involuntary manslaughter. Cotton was tried separately and found guilty of voluntary manslaughter.

1. *Seaver's testimony.* In his appearance before the grand jury, Seaver testified that he had seen the defendant on top of the victim, choking him. At trial, however, Seaver denied having seen the scene he previously described before the grand jury. His grand jury testimony was introduced in evidence pursuant to the rule of *Commonwealth* v. *Daye*, 393 Mass. at 73-75. (This rule has been further explained by *Commonwealth* v. *Clements*, 436 Mass. 190, 192-193 [2002], which was released on the last day of this trial.)

The defendant claims that the Commonwealth called Seaver to testify at trial solely in order to impeach him with his inconsistent testimony before the grand jury. He argues this was error under *Commonwealth* v. *Benoit*, 32 Mass. App. Ct. 111, 114-117 (1992). However, as the Commonwealth correctly points out, *Benoit* is distinguishable. In *Benoit*, the witness could not provide any probative evidence at trial. The sole purpose of calling the witness to testify was to bring his previous testimony to the jury's attention, thereby impeaching his testimony by hearsay evidence. *Id.* at 114.

Here, by contrast, Seaver had a current memory of the events of June 12, 1999. His testimony contained probative evidence. He saw the defendant in the apartment where the beating took place, he heard and described the sounds coming from the apartment, he remembered the length of time the beating lasted, and he saw the victim's appearance the next morning. See *Cramer* v. *Commonwealth*, 419 Mass. 106, 111 n.3 (1994). Moreover, defense counsel had ample opportunity to cross-examine Seaver, which he did. For example, counsel elicited the fact that the police had questioned Seaver and made him aware that the police connected a fight between Seaver and his brother with the beating and eventual death of the defendant. The requirements of *Commonwealth* v. *Daye*, *supra* at 73-75, were met. (The requirements of *Commonwealth* v. *Clements*, *supra* at 192-193, were also met.)

We find no merit to the defendant's claim, raised for the first time on appeal, see *Commonwealth* v. *Rivera*, 37 Mass. App.

Ct. 244, 251-252 (1994), that Seaver's grand jury testimony was coerced. There was no abuse of discretion in allowing Seaver's grand jury testimony in evidence. See *Commonwealth v. Carrasquillo*, 54 Mass. App. Ct. 363, 369-371 (2002).

2. *Sufficiency of the evidence.* At the conclusion of the prosecution's opening statement, and again at the conclusion of the prosecution's case, the defendant moved for a required finding of not guilty as to the defendant's individual liability for the victim's death. The judge denied both motions. On appeal, the defendant claims error on the ground that there was insufficient evidence that the defendant was responsible for the "fatal blow" that led to the victim's death. We disagree.

Although the Supreme Judicial Court has noted that "the preferable practice [where the case is submitted to the jury on theories of individual as well as joint liability] would be to provide a verdict slip requiring the jurors to specify on which theory . . . they convict," *Commonwealth v. Maynard*, 436 Mass. 558, 561 n.2 (2002), it has not so required. See *Commonwealth v. Ellis*, 432 Mass. 746, 761 (2000). Rather, when there is a general verdict, as here, "we must review the sufficiency of the evidence under both theories." *Commonwealth v. Maynard, supra* at 561.

In this case, the sufficiency of evidence of joint venture is conceded. We therefore focus on whether there is sufficient evidence to prove individual liability. Applying the standard articulated in *Commonwealth v. Latimore*, 378 Mass. at 676-677, we conclude that the record supports the defendant's conviction. See *Commonwealth v. Cohen*, 412 Mass. 375, 380 (1992).

The judge correctly advised the jury of the three elements required to prove the crime of involuntary manslaughter based on an unintentional, unlawful killing as a result of a battery that the defendant knew or should have known endangered human life. The Commonwealth must prove beyond a reasonable doubt (1) that the killing was unlawful and that the defendant intended to commit the battery (but the Commonwealth need not prove that the defendant intended the death that resulted from the battery); (2) that the defendant committed a battery upon the decedent that, under the circumstances, the defendant knew

or reasonably should have known endangered human life; and (3) that the battery caused the death of the deceased. See generally Massachusetts Superior Court Criminal Practice Jury Instructions § 2.7.2 (1999).

There was sufficient evidence to prove each of these elements. The evidence of intent to commit the battery includes the witnesses' observations of the defendant kicking and punching the victim, his failure to let up upon interruption, his admission to his girl friend that he and Cotton beat the victim "pretty bad," and his statement of motive that "[t]here was weight missing and so [the victim] paid his penalty."

Some of the same evidence also proves that the defendant knew or reasonably should have known that the beating could endanger the victim's life. The level of risk of physical harm necessary to prove involuntary manslaughter battery causing death is stated in *Commonwealth* v. *Welansky,* 316 Mass. 383, 399 (1944), under the wanton and reckless theory of manslaughter — a "high degree of likelihood that substantial harm will result to another," along with "indifference to or disregard of probable consequences" to the other. See *Commonwealth* v. *Sneed,* 413 Mass. 387, 394 (1992). Such conduct is precisely what is at issue here.

The defendant insists that in order to be convicted of direct liability, the Commonwealth had to prove that the defendant delivered the fatal blow, citing *Commonwealth* v. *Flynn,* 420 Mass. 810 (1995). We disagree. *Flynn* is distinguishable. In that case, the cause of death was a "subarachnoid hemorrhage at the base of the brain and swelling due to multiple blunt force injuries of the face and the head." *Id.* at 811. There was evidence that the defendant kicked the victim hard in the chest and the groin. *Id.* at 812. Flynn admitted giving the victim "a couple of shots to the face," *id.* at 814, but "there was no evidence as to the amount of force with which those blows to the face were delivered," *id.* at 815. The Supreme Judicial Court therefore held that there was no proof that the victim was harmed by those blows, *id.* at 815-816, and reversed Flynn's conviction on the ground that the defendant's motion for a required finding should have been allowed.

In his reply brief, the defendant argues that "[t]he medical

examiner concluded that death was 'a result of blunt abdominal trauma.' Death was not the result of cumulative actions as in the . . . cases" the Commonwealth cites. We disagree. The medical testimony clearly indicated an extensive and violent beating. Even if the injury to the bowel could itself have been fatal, the extensiveness of the beating surely contributed to the fatal result. See *Commonwealth* v. *Perry*, 432 Mass. 214, 225 (2000) ("Where a defendant causes an injury which, along with other contributing factors or medical sequella of the injury, leads to death, jurors may determine that the defendant's acts were the proximate cause of the injury"). Moreover, there was no evidence of a discrete blow, but rather there was a massive trauma. The words "blunt trauma" need not be limited to describing a single blow. *Ibid.* The defendant's decision to ignore the victim's suffering, which continued for hours, constituted wanton and reckless conduct. See *Commonwealth* v. *Welansky*, *supra* at 399.

As for the third element, the evidence that the battery, in all its manifestations, caused the victim's death, is clear. The defendant's conviction is therefore affirmed.

*Judgment affirmed.*