## COMMONWEALTH *VS.* DENNIS HADLEY.

No. 09-P-1177.

Worcester. June 9, 2010. - December 8, 2010.

Present: RAPOZA, C.J., SIKORA, & RUBIN, JJ.

*Homicide. Assault and Battery. Practice, Criminal,* Motion to suppress, Voluntariness of statement, Waiver, Assistance of counsel. *Evidence,* Voluntariness of statement. *Constitutional Law,* Assistance of counsel, Waiver of constitutional rights.

At a criminal trial, the evidence was sufficient to sustain the defendant's conviction of involuntary manslaughter by battery, where a rational jury could have found beyond a reasonable doubt that the defendant reasonably should have realized that successive booted kicks to the head and midsection endangered the victim's life, and that the defendant knowingly carried out a severe battery and created the risk of fatal injury, a risk which he reasonably should have appreciated, without knowledge of the victim's special vulnerability. [408-410]

A Superior Court judge properly denied a criminal defendant's motion to suppress a written statement he gave to a correction officer, where the evidence proved beyond a reasonable doubt that the defendant competently waived his Miranda rights. [410-411]

A Superior Court judge properly denied a criminal defendant's motion to suppress statements he made to a correction officer, where the defendant volunteered the inculpatory information, and the officer engaged in no focused questioning and did not elicit any statements or otherwise knowingly exploit an opportunity to question the defendant without counsel present. [411-412]

INDICTMENT found and returned in the Superior Court Department on July 20, 2005.

A pretrial motion to suppress evidence was heard by *Peter W. Agnes,* J., and the case was tried before him.

*Ellen A. Jawitz* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. The defendant appeals from a Superior Court jury

conviction of involuntary manslaughter by battery, G. L. c. 265, § 13.[1] He contends that the evidence was insufficient to support his conviction and that the judge wrongly refused to suppress two separate sets of statements. For the following reasons, we affirm.

*Background.* The evidence permitted the jury to find the following facts. The defendant, Dennis Hadley, and Daniel McMullen occupied the same cell at the Worcester County jail and house of correction.[2] On February 3, 2005, at about 2:30 A.M., two other inmates overheard banging and yelling from the cell. One inmate heard Hadley say, "Don't make me put my boots on" (which in prison slang means that an individual is ready to fight) and "I don't want to hurt you." The other inmate heard Hadley say "Don't do it," "I'm trying to save your life," and "Just stay down."

At about the same time, Hadley called for correction officers to come to the cell. The officers approached and saw that McMullen was sitting on a stool with a bleeding lip and abraded chin. They noticed also that Hadley was "quite calm." Hadley told them that McMullen and he had disagreed. The officers removed Hadley to an empty cell. Sergeant Thomas Chabot arrived soon afterward and took a written statement from McMullen. McMullen then went to the hospital to have his lip sutured. He reported no other complaints of pain and returned to the jail later that morning.

After speaking to McMullen, Sergeant Chabot went to Hadley's cell at about 3:20 A.M. and recited Miranda warnings to him. Hadley affirmed that he understood the warnings and signed a Miranda waiver form.[3] Sergeant Chabot asked Hadley whether he had kicked McMullen. Pausing momentarily before answer-

---

[1] The Commonwealth charged Hadley with one count of murder, G. L. c. 265, § 1. The judge instructed the jury on murder in the first degree, as well as the lesser included offenses of murder in the second degree, voluntary manslaughter, involuntary manslaughter, and assault and battery. The jury found the defendant guilty of the lesser included offense of involuntary manslaughter by battery.

[2] At the time of relevant events, Hadley was forty-nine years old, five feet nine inches tall, and 173 pounds in weight. McMullen was forty-two years old, six feet one inch tall, and 195 pounds in weight.

[3] The form contained a consent provision indicating his willingness to make a statement and answer questions without assistance of counsel.

ing, Hadley denied kicking McMullen. He explained, however, that he had pushed McMullen, who fell against a bunk and onto the floor, because McMullen had asked Hadley to return his cards and had pointed a finger in Hadley's face. At the conclusion of the interview, Hadley made a brief written statement: "My cellie Dan[,] [h]e stuck his middle finger in my eye[.] I said don't and I pushed back on to his bunk and he fell off." Sergeant Chabot testified that during the interview Hadley had acted normally.

At 5:25 p.m. that same day, McMullen developed abdominal pain and very low blood pressure and returned to the hospital. He was diagnosed with a lacerated spleen and internal bleeding, despite the lack of any visible bruising on his abdomen. Mc-Mullen suffered also from serious pre-existing medical conditions.[4] Although the doctors were able to stop McMullen's internal bleeding, he developed a serious infection and multiple organ failure which led to his death on February 23, 2005, twenty days after his altercation with Hadley. The medical examiner attributed McMullen's death to "multiple complications of splenic laceration due to blunt impact." He regarded underlying liver disease and an enlarged vulnerable spleen as "contributory factors." He testified that the injury to McMullen's enlarged spleen was consistent with the infliction of some trauma, including a kick.

More than two years later, on May 28, 2008, Hadley spoke to correction Officer John Adams to request relocation to another cell in order to prepare for trial of the offenses which he was alleged to have committed against McMullen. During the conversation, Hadley asked Officer Adams, "Do you know why I'm here?" Officer Adams answered that he knew only the charges against him. Hadley volunteered that he had been upset because McMullen had used his cards and had kicked McMullen in the mouth and then in the torso as McMullen had attempted to get up. He mentioned also that he was unconcerned about his upcoming trial because the prosecution had lost his boots.

Before trial, Hadley moved to suppress his statements to

---

[4]McMullen suffered from hepatitis C, portal hypertension, end-stage cirrhosis of the liver, esophageal varices, and an enlarged spleen (three times the size of a normal spleen). He also had a history of internal bleeding.

Sergeant Chabot. After an evidentiary hearing, the motion judge, who was also the trial judge, denied the motion upon his finding that Hadley, although diagnosed with bipolar disorder and having a history of making ostensibly delusional statements, had made his statements knowingly, intelligently, and voluntarily. Trial began before a jury, during which Hadley moved for dismissal of the indictments "or suppression" of his statements to Officer Adams. After a voir dire hearing, the judge denied the motion. He found that Hadley's disclosures had been spontaneous. At the conclusion of trial, the jury convicted Hadley of involuntary manslaughter. The judge sentenced him to four to seven years in prison.

*Analysis.* Hadley submits three arguments: that there was insufficient evidence to support the verdict of involuntary manslaughter; that the judge incorrectly denied his motion to suppress because his statement to Sergeant Chabot was not knowing, intelligent, and voluntary; and that the judge wrongly denied his motion to suppress statements made to Officer Adams because the officer had failed to inform him that he should refrain from speaking in the absence of his attorney.

1. *Sufficiency of the evidence for the conviction.* Hadley contends specifically that the evidence did not permit the finding that he knew or should have known that his conduct could endanger McMullen's life. Viewing the evidence in the light most favorable to the Commonwealth, we conclude otherwise. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

To establish involuntary manslaughter by battery, the Commonwealth had to prove beyond a reasonable doubt that the defendant had committed an unintentional, unlawful killing and, more specifically, (1) that he had committed a battery that he knew or reasonably should have known either (a) endangered human life, or (b) created a high degree of likelihood of substantial harm to the victim; and (2) that the battery caused the death of the victim. See *Commonwealth* v. *Williams*, 428 Mass. 383, 390 (1998). See also *Commonwealth* v. *Hailey*, 62 Mass. App. Ct. 250, 253-254 (2004). Hadley disputes only the sufficiency of evidence of the first element.

Upon the first element, the judge charged that the defendant must reasonably have known that his battery endangered human

life. The evidence permitted that finding. Neighboring cellmates overheard yelling and banging from the cell of Hadley and Mc-Mullen. They heard Hadley tell McMullen to keep down and that, in prison jargon, he was ready to fight McMullen. Subsequently, Hadley disclosed to Officer Adams that he had kicked McMullen in the mouth and had then kicked him in the torso as he tried to get up; and that the jail had lost his (Hadley's) boots. Finally, the medical examiner testified that McMullen's death resulted from blunt trauma to the spleen consistent with the impact of a kick. A rational jury could have found beyond a reasonable doubt that the defendant reasonably should have realized that successive booted kicks to the head and the midsection, the site of multiple vital organs, endangered the victim's life. That finding need only be permissible, not compelling. *Commonwealth* v. *Platt*, 440 Mass. 396, 400 (2003).

Hadley argues that he could not have known that his battery endangered McMullen's life because he did not know of McMullen's pre-existing conditions and susceptibility. That lack of awareness does not eliminate his culpable mentality. The anatomy of the torso includes the heart, lungs, liver, pancreas, spleen, large intestine, and aorta artery.[5] In circumstances in which the defendant pushed or knocked the victim to the lower bunk or floor, kicked him in the head, and then without obstruction kicked him in the abdomen, he knowingly carried out a severe battery and created the risk of fatal injury.[6] The defendant reason-

[5]Gray, Anatomy, Descriptive and Surgical, 546, 923-925, 933-934, 945-948, 949-954 (Pick & Howden 1901 ed.). In our culture a reasonable person may not possess specific knowledge of the arrangement of internal organs, but he does possess chargeable knowledge of their general location and vital importance.

[6]Our holding is that the defendant did, or should have, understood that risk. We need not reach the question whether, in the present circumstances, the law placed upon him the risk of a victim's unknown special vulnerability. See *Commonwealth* v. *Carlson*, 447 Mass. 79, 86 (2006) ("Our long-standing rule in Massachusetts, in criminal law as well as in tort, is that 'the wrongdoer takes the victim as he or she finds him.' *Commonwealth* v. *Tevlin*, 433 Mass. 305, 313 [2001]").

Our determination of the defendant's chargeable knowledge of the endangerment of human life accords with the modern Massachusetts formulation of involuntary manslaughter by battery. See *Commonwealth* v. *Sheppard*, 404 Mass. 774, 776 (1989), quoting from *Commonwealth* v. *Bianco*, 388 Mass. 358, 362 (1983) ("We have consistently held that '[a] battery that causes

ably should have appreciated that risk, without knowledge of the victim's special vulnerability.

2. *Miranda.* Hadley argues also that the judge incorrectly denied his motion to suppress his written statement to Sergeant Chabot. He asserts that, in violation of his Miranda rights, he did not knowingly, intelligently, and voluntarily give statements to Sergeant Chabot because he suffered from a severe mental illness.

At the suppression hearing, the evidence of the events of the morning of February 3, 2005, closely tracked the evidence submitted at trial. The judge credited the testimony of four correction personnel who responded to the altercation between Hadley and McMullen. They testified that Hadley did not appear confused, followed directions ably, responded appropriately to their questions, and exhibited no signs of impairment by medication, controlled substance, or other condition.[7] Sergeant Chabot, to whom Hadley made his written statement, reported that Hadley was calm and exhibited no unusual behavior indicative of a delusion.

In addition, the Commonwealth proffered expert testimony from Dr. Malcolm Rogers, a psychiatrist who evaluated Hadley and reviewed his medical records. The judge specifically credited Dr. Rogers's testimony that no evidence in the record suggested that Hadley, who had been diagnosed with bipolar disorder, lacked the capacity to make a valid waiver of his Miranda rights. Upon this evidence, the judge found beyond a reasonable doubt that Hadley had knowingly, intelligently, and voluntarily waived his Miranda rights.

In reviewing a motion to suppress, we are bound by the motion judge's findings of fact absent clear error. *Commonwealth* v. *Thomas,* 429 Mass. 403, 405 (1999). "We independently

death is manslaughter[;]' " single punch by perpetrator causes victim to fall and strike head). See also *Commonwealth* v. *Pease,* 49 Mass. App. Ct. 539, 541 (2000) ("A battery causing death is manslaughter[;]" a single violent shove between intoxicated friends causes the victim to fall and fatally strike his head). A battery not amounting to a felony is sufficient if the defendant should have known that it would endanger human life. *Commonwealth* v. *Catalina,* 407 Mass. 779, 787, 789 (1990). *Commonwealth* v. *Sires,* 413 Mass. 292, 302 n.10 (1992). See Model Jury Instruction on Homicide 34 (1999).

[7]Two correction officers knew that Hadley suffered from a mental condition, received treatment and care for his mental health issues, and referred to himself occasionally as Jesus Christ.

determine whether the judge correctly applied constitutional principles to the facts as found." *Commonwealth* v. *Isaiah I.*, 450 Mass. 818, 821 (2008). "Where there is a claim of mental illness, the Commonwealth must show that the waiver was knowing, intelligent, and voluntary, 'notwithstanding [that] mental illness.' " *Commonwealth* v. *Druce*, 453 Mass. 686, 699 (2009), quoting from *Commonwealth* v. *Zagrodny*, 443 Mass. 93, 99-100 (2004).

Ample evidence in the record supports the judge's denial of Hadley's motion. The judge credited the testimony of all the correctional officers and the Commonwealth's expert. Through correctional personnel, the Commonwealth demonstrated that Hadley had behaved calmly and rationally at the time of his Miranda warning, had signed the waiver, and had made his written statement. Through Dr. Rogers, the Commonwealth showed that Hadley was competent and able to waive his Miranda rights. Evidence that Hadley had refrained from any mention to correction personnel of his kick to McMullen's torso further established his presence of mind. Altogether this evidence proved beyond a reasonable doubt that Hadley competently waived his Miranda rights.

3. *Admission to Officer Adams.* Finally, Hadley maintains that the judge improperly denied his motion to suppress his statements to Officer Adams. He argues that Adams's failure to advise him not to speak in the absence of his attorney violated his right to counsel under the Sixth Amendment to the United States Constitution.[8] We disagree.

The judge allowed voir dire questioning of Officer Adams and Sergeant Michael Sampson. He generally credited their testimony and found the following facts. Hadley approached Officer Adams to ask for permission to move from one cell to

---

[8] In one portion of his brief, Hadley argues generally that the right to counsel under art. 12 of the Massachusetts Declaration of Rights operates more broadly than the Sixth Amendment and should bar the admission in evidence of Hadley's self-incriminating statements to Adams. No decisional law supports such an application of art. 12 to these circumstances. The major decision weighs against the contention. See *Commonwealth* v. *Anderson*, 448 Mass. 548, 556-557 (2007) (declining to adopt a rule that art. 12 requires the presence of defendant's lawyer even if defendant has waived his right to counsel). We reject the argument.

another so that Hadley could prepare for his upcoming trial in this case. Hadley asked Adams whether he knew why Hadley was going to trial. Officer Adams stated that he knew generally about the case. Hadley continued to explain, without any prompting from Officer Adams, that McMullen and he had argued over his cards and that he had kicked McMullen first in the mouth and then in the torso as McMullen was trying to get up. He added, "It doesn't matter because the jail lost my boots."

After listening to Hadley, Adams agreed to move him to another cell, and their conversation, which took place amid other inmates, ended. Officer Adams casually mentioned his conversation with Hadley to Sergeant Sampson, a residential neighbor of his. A few weeks later, Sampson, after reading an article about Hadley's trial, told a State police officer involved in Hadley's case about Adams's conversation with Hadley. State police then asked Officer Adams to make a statement. Upon this evidence, the trial judge concluded that the statements made by Hadley to Adams were not the result of any interrogation or questioning but were merely spontaneous conversation uttered by Hadley.

The judge ruled correctly. Hadley volunteered the inculpatory information. Adams passively received the information gratuitously furnished by Hadley. He engaged in no focused questioning and did not elicit any statements or otherwise knowingly exploit an opportunity to question Hadley without counsel present.[9] See *Commonwealth* v. *Bandy*, 38 Mass. App. Ct. 329, 334 (1995). See also *Commonwealth* v. *Hilton*, 443 Mass. 597, 618 (2005). These circumstances did not bring into play Hadley's Sixth Amendment right to counsel. The trial judge correctly denied Hadley's motion to suppress.

*Conclusion.* Sufficient evidence supported Hadley's conviction for involuntary manslaughter. His inculpatory statements were properly in evidence.

*Judgment affirmed.*

---

[9]Officer Adams did not respond quickly or alertly to the information from Hadley (another indication of the unofficial nature of the conversation). If anything, Adams assumed that the information was common knowledge about the case.