NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-403

COMMONWEALTH

vs.

CODY R. URBAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After trial on an indictment charging murder in the first degree, a Superior Court jury found the defendant, Cody R. Urban, guilty of the lesser included offense of voluntary manslaughter. On appeal, he claims that the evidence was insufficient to prove his identity as the assailant and that the Commonwealth failed to prove that he did not act in self-defense. He further claims that the Commonwealth improperly called a witness solely for the purpose of introducing inadmissible hearsay and that the prosecutor made improper remarks during his opening statement and closing argument. We affirm.

Background.  Viewing the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the jury could have found the following facts.  On the evening of August 23, 2020, the victim, Samuel Rutledge, drove himself and his girlfriend to a gas station convenience store.  As he drove towards the entrance, the defendant -- described by the victim's girlfriend as a tall white male with short strawberry-blond hair and blue eyes, wearing a blue medical mask and a black hooded Nike sweatshirt -- blocked his path.  The victim gestured to the defendant to move, and when the defendant refused, the victim lowered the window of his car and the two men argued.  The defendant approached the driver's door, at which point the victim "hopped out" of his car and hit the defendant in the face with his fist.  The two men briefly grappled with each other. While they were locked together, the defendant stabbed the victim multiple times.  After the two men disengaged, the victim ran back to the car and said to his girlfriend, "[B]ring me to the hospital. I just got stabbed."

On the way to the hospital, the victim was in visible pain, holding his chest, and "gagging for air."  By the time he arrived at the hospital and was taken to the operating room his heart had stopped and a surgeon pronounced him dead.  The victim

had been stabbed four times, three times in the chest and abdomen, and once on the left forearm.  One of the stab wounds penetrated five and one-half centimeters into the victim's chest and created a hole in his heart.  Another stab wound perforated the victim's stomach and entered his aorta.  Either of these wounds alone would have been fatal.

Video surveillance cameras at the gas station and a building across the street recorded the initial encounter, the two men wrestling, the stabbing, and the person who stabbed the victim immediately getting into a car and driving away.  The video surveillance footage was admitted as evidence at trial, but the defendant could not be identified from the footage.  Instead, as discussed below, the Commonwealth introduced a web of circumstantial evidence to prove the defendant's identity.

Discussion.  1.  Evidence of the defendant's identity.  The defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he stabbed the victim because it was entirely circumstantial and "did not really tie the knot on any of the points it bore on."

"In reviewing claims of insufficient evidence, we view the evidence presented at trial, together with reasonable inferences therefrom, in the light most favorable to the Commonwealth to determine whether any rational jury could have found the

3

defendant guilty of the offense beyond a reasonable doubt."
Commonwealth v. Martinez, 487 Mass. 265, 275 (2021). See
Latimore, 378 Mass. at 676-677. Circumstantial evidence may be
sufficient to prove guilt beyond a reasonable doubt, and the
inferences drawn from such evidence "need only be reasonable and
possible; [they] need not be necessary or inescapable."
Commonwealth v. Grandison, 433 Mass. 135, 141 (2001), quoting
Commonwealth v. Lodge, 431 Mass. 461, 465 (2000).

"Proof of the identity of the person who committed the
offense may be established in a number of ways and '[i]t is not
necessary that any one witness should distinctly swear that the
defendant was the [person], if the result of all the testimony,
on comparison of all its details and particulars, should
identify [the person] as the offender.'" Commonwealth v.
Beaulieu, 90 Mass. App. Ct. 773, 780-781 (2016), quoting
Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010).
See Commonwealth v. Raedy, 68 Mass. App. Ct. 440, 443 (2007)
("our law . . . does not unalterably require percipient
eyewitness testimony to the crime charged"). Here, the
Commonwealth presented the testimony of several witnesses and
forensic evidence establishing that the unidentified man in the
surveillance footage was the defendant.

4

The victim's girlfriend provided a description of the man who blocked the victim's car that matched that of the defendant. A Federal Bureau of Investigation agent testified that cell site location information confirmed that the defendant's cell phone was in the area of the gas station on the night of the incident. See Commonwealth v. Davis, 487 Mass. 448, 462-464 (2021) (combination of global positioning system data, video surveillance footage, and witness's description was sufficient to prove defendant's identify as shooter). The defendant's deoxyribonucleic acid (DNA) was found on two plastic cups recovered at the gas station, and surveillance footage showed the person who stabbed the victim drinking from a similar looking cup as the victim's car was pulling into the gas station.

Surveillance footage also showed a man resembling the defendant parking a white Toyota Corolla at the gas station on the night in question and getting out of the car wearing a black sweatshirt. The police traced the car to a rental agency, and an agency employee testified that the defendant had rented the car two months prior.[1] The surveillance footage captured the person who stabbed the victim fleeing the scene in the same car.

---

[1] Police had obtained the license plate from surveillance footage taken the day before, of the same gas station, during daylight hours.

A nip bottle of alcohol with the defendant's DNA on it was recovered from the car after it was found abandoned several days later. Even if the evidence did not require the jury to draw the inference that the defendant was the man in the surveillance video footage, the jury could reasonably draw that inference. See Commonwealth v. Shiner, 101 Mass. App. Ct. 206, 212 (2022) ("To the extent that conflicting inferences are possible from the evidence, it is for the jury to determine where the truth lies" [quotation and citation omitted]).

In addition, the Commonwealth introduced substantial evidence of the defendant's consciousness of guilt. First, the defendant abandoned his car and his phone after the stabbing. See Commonwealth v. Robertson, 489 Mass. 226, 230 (2022) (asking girlfriend to cancel cell phone number day after shooting demonstrated consciousness of guilt); Commonwealth v. Morris, 465 Mass. 733, 738-739 (2013) (consciousness of guilt could be inferred from defendant's immediately getting into vehicle and leaving crime scene). Then, instead of returning home, the defendant fled to New Hampshire where he stayed with a friend until he was arrested by police four days later. See Commonwealth v. Carrion, 407 Mass. 263, 277 (1990) ("Flight is perhaps the classic evidence of consciousness of guilt"). "Although these discrete pieces of evidence, standing alone,

might not be sufficient to sustain a conviction, together they form a 'mosaic' of evidence such that the jury could conclude, beyond a reasonable doubt, that the defendant was the [assailant]" (citation omitted).  Commonwealth v. Jones, 477 Mass. 307, 317 (2017).

2.  Self-defense.  Because the defendant claimed that the use of deadly force in this case was in self-defense, the Commonwealth was required to prove at least one of the following propositions beyond a reasonable doubt to prove "the absence of proper use of self-defense":

> "(1) the defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (2) a reasonable person in the defendant's position would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force; or (4) the defendant used more force than was reasonably necessary in all the circumstances."

Commonwealth v. Grassie, 476 Mass. 202, 210 (2017), S.C., 482 Mass. 1017 (2019).[2]  The defendant claims that the Commonwealth failed to prove any of the above.  We disagree.  Viewed in the

---

[2] If the Commonwealth proves only the fourth proposition, the defendant may not be convicted of murder but is guilty of voluntary manslaughter.  See Grassie, 476 Mass. at 210.

7

light most favorable to the Commonwealth, the evidence satisfied at least the second and fourth propositions.

The Commonwealth presented sufficient evidence from which the jury could find that a reasonable person in the defendant's shoes would not have believed he was in immediate danger of death or serious bodily injury.  The victim struck the defendant with his bare hands, and there was no evidence that the victim had a weapon at his disposal.  The defendant argues that, because the surveillance videotape has no audiotape, the victim might have said something that would have given the defendant reason to fear imminent bodily harm or death.  Viewing the evidence in the light most favorable to the Commonwealth, however, we need not fill the vacuum with evidence favorable to the defendant.  Cf. Hartfield v. Commonwealth, 443 Mass. 1022, 1022 (2005) ("The flaw in [the defendant's] argument is that the jury were not required to credit the evidence supporting [his] contention that [he] acted on provocation or in self-defense").

There was also ample evidence that the defendant used excessive force in his response to the victim's attack.  As in Commonwealth v. Ramos, 66 Mass. App. Ct. 548, 555 (2006), where this court held that the defendant was not even entitled to an instruction on self-defense, the victim attacked the defendant only with his fists, and not with "a degree of force likely to

8

cause serious injury or bodily harm."  Moreover, when the defendant was apprehended, he had no visible injuries.  See id. The defendant, however, retaliated by stabbing the victim four times with a knife, with a degree of force sufficient to cause two fatal wounds.  A rational jury could have found that this degree of force was not reasonably necessary for the defendant to repel the victim's attack.  The defendant is not entitled to an acquittal on the ground that the Commonwealth failed to carry its burden of disproving the proper exercise of self-defense.

3.  Impeachment of witness with prior inconsistent statements.  The defendant argues that it was error for the Commonwealth to introduce, through Detective Michael Bunker, prior inconsistent statements of the defendant's friend, Brian Elliot.  Specifically, after Elliot denied telling officers that the defendant had told him "that [the defendant] needed to lay low and it's nothing crazy," Bunker testified that Elliot had in fact told Bunker that the defendant "said that he was to lay low."  Relying on a single case, Commonwealth v. Benoit, 32 Mass. App. Ct. 111 (1992), the defendant claims that there was no purpose for Elliot's testimony other than to lay a foundation for the admission of his prior inconsistent statements.

Parties are permitted to impeach their own witnesses with their prior inconsistent statements.  See Commonwealth v. Scott,

9

408 Mass. 811, 823-824 & n.14 (1990); Commonwealth v. Pires, 97 Mass. App. Ct. 480, 484 (2020).  See also G. L. c. 233, § 23; Mass. G. Evid. § 607, 613(a)(1) (2025).  "[H]owever, . . . a party cannot rely on this statutory right to call a witness whom he knows beforehand will offer no testimony relevant to an issue at trial solely for the purpose of impeaching that witness with prior inconsistent statements that would otherwise be inadmissible."  Commonwealth v. McAfee, 430 Mass. 483, 489-490 (1999), citing Benoit, 32 Mass. App. Ct. at 114-115.  This is not such a case.

Elliot's testimony provided significant, relevant evidence apart from his prior inconsistent statements.  See Cramer v. Commonwealth, 419 Mass. 106, 111 n.3 (1994).  Elliot testified that the defendant arrived at Elliot's apartment in New Hampshire, unannounced, the day after the stabbing and stayed for three nights.  Elliot was present when the police arrested the defendant for the homicide and searched Elliot's apartment for evidence, resulting in the seizure of the defendant's newly acquired cell phone and tablet device.  This is not a case where the witness's testimony "added nothing of value."  Pires, 97 Mass. App. Ct. at 485.[3]

---

[3] Because we discern no error, we need not decide whether the defendant's objections to Bunker's testimony adequately preserved this issue.  We do note that the judge gave repeated,

4.  Closing argument.  For the first time on appeal, the defendant challenges several of the prosecutor's remarks in closing argument.[4]  We review these claims to determine whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Sanchez, 405 Mass. 369, 375 (1989).

The defendant's only argument supported by legal authority is that the prosecutor improperly commented on the defendant's right not to testify by stating that there was "nothing to contradict" the victim's girlfriend's testimony that the victim did not have a weapon.  Examined in the context of the entire argument, see Commonwealth v. Drummond, 76 Mass. App. Ct. 625, 630-631 (2010), the prosecutor's statement was a permissible comment on the state of the evidence.  See Commonwealth v. Buzzell, 53 Mass. App. Ct. 362, 367 (2001) (prosecutor is allowed to emphasize strength and weaknesses of defendant's

_____

forceful, specific instructions that the jury were not to consider Bunker's testimony about Elliot's prior statements for the truth of those statements, but solely for the purpose of assessing Elliot's credibility.  The judge repeated this instruction, in more general terms, in the final charge to the jury.

[4] In his principal brief, the defendant also made a claim about the prosecutor's opening statement.  The prosecutor's statement underlying that claim, however, does not appear in the corrected transcript, which was submitted after the defendant filed his brief.  We need not address the issue further.

11

case, even if doing so may "prompt some collateral or passing reflection on the fact that the defendant declined to testify" [citation omitted]).  See also Commonwealth v. Feroli, 407 Mass. 405, 408-409 (1990).

We briefly address the defendant's remaining contentions. The record does simply not support the defendant's claim that the prosecutor made substantive use of Elliot's prior inconsistent statements.  The prosecutor's arguments about the defendant's lack of injury were permissible and relevant to the defendant's claim of self-defense.

<u>Judgment affirmed</u>.

By the Court (Massing, Englander & D'Angelo, JJ.[5]),

Clerk

Entered:  July 15, 2025.

---

[5] The panelists are listed in order of seniority.