## Commonwealth *vs.* Luis Drummond.

No. 08-P-1259.

Middlesex. December 10, 2009. - April 22, 2010.

Present: Lenk, Duffly, & McHugh, JJ.

*Practice, Criminal,* Admissions and confessions, Voluntariness of confession, Instructions to jury, Argument by prosecutor. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights.

Where a criminal defendant was convicted of armed robbery while masked, based in part on a confession he made to a police detective when the two were alone in a police interrogation room, the trial judge's errors in his instructions to the jury, to which the defendant did not object, regarding the failure of the police to record the interrogation, did not create a substantial risk of a miscarriage of justice, given the Commonwealth's other formidable evidence of the defendant's guilt. [627-630]

At a criminal trial, a statement in the prosecutor's closing argument, in which he maintained that there was "no evidence" that the defendant's confession was involuntary, did not, when taken in context and in light of the judge's instructions to the jury, constitute an impermissible comment on the defendant's failure to testify. [630-631]

INDICTMENT found and returned in the Superior Court Department on March 27, 2007.

The case was tried before *Diane M. Kottmyer,* J.

*Cynthia Vincent Thomas* for the defendant.

*Jessica Langsam,* Assistant District Attorney, for the Commonwealth.

LENK, J. The defendant, Luis Drummond, was convicted of armed robbery while masked, G. L. c. 265, § 17, based in part on a confession he made to a detective when the two were alone in a police interrogation room. Because the interrogation had not been recorded, the defendant requested and received a jury instruction pursuant to *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 447-448 (2004). However, the trial judge blunted the impact of the instruction by telling jurors they could disregard it if they

found that the defendant had in essence declined to have the interrogation recorded after being advised of his right to have that done. The judge also omitted the second half of the instruction, which allows but does not compel jurors to find that a confession was involuntary if it was not recorded. No objection was lodged to what we conclude were erroneous instructions. Nonetheless, given the Commonwealth's other formidable evidence, we hold that the error did not create a substantial risk of a miscarriage of justice. The defendant's remaining contention as to the prosecutor's closing is without merit.

*Background.* The jury could have found the following. Following his arrest, the defendant received Miranda warnings in English and was also provided with written warnings in Portuguese, his native language. He signed the written form, indicating that he understood his rights, and was taken into an interview room, accompanied only by a Detective Johnson. According to the detective's testimony, inside the room, the detective repeated the Miranda warnings and told the defendant that he had a right to have an audiotape made of the interview. The defendant declined recording and signed a waiver, in English, to that effect. The waiver was subsequently lost and not produced at trial. The defendant then proceeded to confess that he had been the getaway driver during the robbery. The interview was conducted in English, and the defendant showed no difficulty understanding what was being said.

Following the interview, the defendant led officers to the scene of the robbery, giving detailed directions in English. Upon arrival, he showed police the exact spot where he had parked to await his companions. He then took the officers on a tour of his escape route, pointing out the house where he dropped off the gunmen after the robbery. During this time, the defendant was cooperative and relaxed and showed no difficulty with the English language.

The defendant presented no witnesses at trial. The only testimony regarding his alleged waiver of the right to record his confession came from Detective Johnson. During the final charge, the judge instructed the jury as follows:

"If you find that the defendant was not advised of a right to have this statement recorded and that he did not decline

the recording then you must consider the following instruction. The Supreme Judicial Court which is our state's highest court has expressed a preference that such interrogations, that is, an interview of a defendant at a police station be recorded whenever practicable. Since there is no complete recording of an interrogation in this case, if you find that the defendant wasn't advised and he had a right to have it recorded and did not exercise his right not to record it, you should weigh the evidence of the alleged statement with caution and care, with great caution and care. The reason is that the Commonwealth may have had the ability to reliably record the totality of the circumstances upon which it actually determined beyond a reasonable doubt that the defendant's statement was voluntar[y], then instead is presenting secondary evidence of the circumstances drawn from the possibly fallible or select memory of witnesses."

The judge then repeated this qualification, telling the jurors that "[i]f in fact he was advised of his right and he declined [to be recorded], then you should disregard that most recent instruction that I gave you but you must consider that instruction if in fact he was not advised of his right to have a statement recorded and declined to have it recorded." Defense counsel raised no objection to these instructions.

On appeal, Drummond claims that qualifying the *DiGiambattista* instruction in the manner that the judge did was error. He also argues that the instruction was incomplete, because the judge failed to tell the jury that they could use the absence of a recording to "conclude that the Commonwealth has failed to prove voluntariness beyond a reasonable doubt," as required when voluntariness is at issue. Finally, he claims that the prosecutor's closing argument made improper reference to his right to remain silent by stating that the voluntariness of his confession was uncontradicted. We address each claim in turn.

1. *The* DiGiambattista *instruction.* Because the defendant did not lodge an objection, we review to determine whether the judge's instructions created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Peppicelli,* 70 Mass. App. Ct. 87, 95 (2007). An erroneous jury instruction poses such a risk if it "materially influence[d]" the jury's verdict. *Commonwealth*

v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The Supreme Judicial Court held that "when the prosecution introduces evidence of a defendant's confession or statement that is the product of a custodial interrogation or an interrogation conducted at a place of detention (e.g., a police station), and there is not at least an audiotape recording of the complete interrogation, the defendant is entitled (on request) to a jury instruction . . . ." *DiGiambattista*, 442 Mass. at 447. Such an instruction is to advise jurors that "the State's highest court has expressed a preference that such interrogations be recorded whenever practicable," and that "because of the absence of any recording of the interrogation in the case before them, they should weigh evidence of the defendant's alleged statement with great caution and care." *Id.* at 447-448. In cases "[w]here voluntariness is a live issue and the humane practice instruction is given, the jury should also be advised that the absence of a recording permits (but does not compel) them to conclude that the Commonwealth has failed to prove voluntariness beyond a reasonable doubt." *Id.* at 448, citing *Commonwealth* v. *Cryer*, 426 Mass. 562, 571 (1998).

a. *The conditional instruction.* The judge told the jurors that they only needed to consider the instruction if they found that the defendant "was not advised of a right to have this statement recorded and that he did not decline the recording." There is nothing in *DiGiambattista* that permits the required instruction to be made conditional in this fashion. The court's decision did not create a new right for a defendant to assert or forgo. Instead, focusing on the benefits to the Commonwealth, the defendant, the court, and the jury that recorded statements would inevitably provide,[1] the court said, clearly and unequivocally, that

"the defendant is *entitled* (on request) to a jury instruc-

---

[1] In that regard, the court in *DiGiambattista* noted that the absence of a recording "resulted in the expenditure of significant judicial resources (by three courts), all in an attempt to reconstruct what transpired during several hours of interrogation conducted in 1998 and to perform an analysis of the constitutional ramifications of that incomplete reconstruction. Where, as here, it is the Commonwealth that bears the burden of proof, gaps in that reconstruction, and the inability to place the coercive features of the interrogation in their precise context, must result in suppression of the statement. We will never know

tion advising that the State's highest court has expressed a preference that such interrogations be recorded whenever practicable, and cautioning the jury that, because of the absence of any recording of the interrogation in the case before them, they should weigh evidence of the defendant's alleged statement with great caution and care" (emphasis supplied).

*DiGiambattista*, 442 Mass. at 447-448.

The multifaceted benefits recordings provide also led the court to conclude that "the instruction is appropriate for *any* custodial interrogation, or interrogation conducted in a place of detention, without regard to the alleged reasons for not recording that interrogation" (emphasis supplied). *Id.* at 448. Particular reasons why an interrogation was not recorded are for the jury to weigh when they consider, after hearing the instruction, evidence of what the Commonwealth contends the defendant said to police. As the court explained, "[i]t is of course permissible for the prosecution to address any reasons or justifications that would explain why no recording was made, leaving it to the jury to assess what weight they should give to the lack of a recording. The mere presence of such reasons or justifications, however, does not obviate the need for the cautionary instruction." *Id.* at 448-449. The judge's limiting language ignored this clear directive and stripped the instruction of at least some of its force. As given, the instruction was incorrect.

b. *The voluntariness prong of the instruction.* At trial, the defendant argued that his inability to understand English rendered his confession involuntary. Because voluntariness was a live issue and the humane practice instruction was given, the jury should "also [have been] advised that the absence of a recording permits (but does not compel) them to conclude that the Commonwealth

---

whether, if able to hear (or even view) the entirety of the interrogation, the impact of the officers' trickery and implied offers of leniency might have appeared in context sufficiently attenuated to permit the conclusion that DiGiambattista's confession was nevertheless voluntary." *Id.* at 440. The court went on to say that "[o]ther jurisdictions . . . have acknowledged that recording of interrogations would act as a deterrent to police misconduct, reduce the number and length of contested motions to suppress, allow for more accurate resolution of the issues raised in motions to suppress, and at trial on the merits, provide the fact finder a complete version of precisely what the defendant did (or did not) say in any statement or confession." *Id.* at 442.

has failed to prove voluntariness beyond a reasonable doubt." *DiGiambattista*, 442 Mass. at 448. The judge, however, failed to give this portion of the instruction.

The Commonwealth argues that the defendant waived the issue because he never requested "this aspect" of the instruction. Indeed, it appears from the record that defense counsel's request did not contain the relevant language. It remains the case, however, that the defendant asked for a *DiGiambattista* instruction by name, and that voluntariness lay at the heart of his defense. We are hard pressed to see how, by the plain language of *DiGiambattista*, he was required to do more than this; his request should automatically have triggered the second half of the instruction. *Id.* at 448.

An erroneous jury instruction poses a substantial risk of a miscarriage of justice if it "materially influence[d]" the jury's verdict. *Commonwealth* v. *Alphas*, 430 Mass. at 13. However, where the Commonwealth's other evidence is "formidable," such a risk is not created. *Id.* at 14. The defendant's unrecorded confession was not the only evidence of his guilt. After the interview, he led investigators to the scene of the crime and detailed his involvement in the robbery. Even if the complete and correct instruction called for by *DiGiambattista* had been given, the voluntariness of these inculpatory statements and actions would still have been determined "on the totality of the circumstances." *DiGiambattista*, 442 Mass. at 448, citing *Commonwealth* v. *Selby*, 420 Mass. 656, 662-663 (1995). Nothing in the record indicates that the defendant's subsequent cooperation with the police was coerced in any way. Given the considerable evidence before the jury as to the defendant's guilt, we find no basis for concluding that the jury's decision "might have been otherwise but for the error." *Alphas*, 430 Mass. at 13, citing *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

2. *The prosecutor's closing statement.* The defendant also takes issue with that aspect of the prosecutor's closing argument which maintained that there was "no evidence" that the confession was involuntary. The defendant claims this was an impermissible comment on his failure to testify, in violation of the State and Federal constitutions. On appeal, we "examine the entire argument to determine whether, in context, the challenged remarks are directed 'more at the general weakness of [the

defendant's] defense than toward the defendant's own failure to testify.' " *Commonwealth* v. *Buzzell*, 53 Mass. App. Ct. 362, 367 (2001), quoting from *Commonwealth* v. *Storey*, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980).

When Detective Johnson presented the defendant with the waiver and elicited his confession, there were no other witnesses present. What this means, according to the defendant, is that the defendant was the only person who could rebut the detective's claim that the waiver was voluntary and, hence, that any reference to the lack of evidence would be a comment on his silence. Taken in context, however, the challenged comment can readily be otherwise understood. The challenged statement came immediately before a catalog of the Commonwealth's own evidence that the confession *was* voluntary, including testimony about the defendant's conduct during booking, which showed that he understood both his Miranda rights and the English language. "A prosecutor is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case, even though he may, in so doing, prompt some collateral or passing reflection on the fact that the defendant declined to testify." *Commonwealth* v. *Feroli*, 407 Mass. 405, 409 (1990). Furthermore, the judge properly instructed the jury on the presumption of innocence and the Commonwealth's burden of proof. She also reminded them that the defendant had a constitutional right not to testify. "[J]urors are presumed to follow a judge's instructions," and we see no reason to believe they did not do so here. *Commonwealth* v. *Montez*, 450 Mass. 736, 746 (2008).

*Judgment affirmed.*