## COMMONWEALTH *vs.* KEVIN ROBINSON.

No. 09-P-1072.

Middlesex. June 3, 2010. - February 11, 2011.

Present: McHugh, Mills, & Grainger, JJ.

*Homicide. Arrest. Practice, Criminal,* Motion to suppress, Admissions and confessions, Voluntariness of statement, Jury and jurors, Voir dire, Instructions to jury. *Evidence,* Admissions and confessions, Voluntariness of statement. *Constitutional Law,* Arrest, Admissions and confessions, Voluntariness of statement, Waiver of constitutional rights. *Waiver. Jury and Jurors.*

A Superior Court judge hearing a criminal defendant's pretrial motion to suppress statements that he made to police did not err in concluding that the defendant made the statements freely and voluntarily and that he freely waived his Miranda rights, even where the police failed to tell the defendant before questioning that they had obtained a warrant for his arrest. [717-718]

At a criminal trial, the judge did not abuse her discretion in declining to conduct an individual voir dire concerning the jurors' attitudes on race, where there was no indication that racial or ethnic differences played any role in the case, and where the defendant failed to establish, beyond mere speculation, some other basis for finding that there existed a substantial risk of extraneous influences on the jury. [718-720]

At the trial of an indictment charging murder in the second degree, error, if any, in the judge's malice instructions was rendered moot where the jury based their conviction on both of two alternative theories and there was sufficient evidence to support one of the two. [720]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the omission of a statement in the judge's jury instructions that the absence of a recording of the defendant's statements to police permitted a finding that the Commonwealth had failed to prove voluntariness, where voluntariness had not been a live issue at any stage of the proceeding, and where there was powerful evidence that the defendant had committed the crime [720-722]; further, the judge's instruction, which allowed the jury to consider whether the defendant indicated that he wished not to be recorded, permissibly invited the jury's attention to a factor they were entitled to consider, while leaving intact the instruction's cautionary force [722].

INDICTMENTS found and returned in the Superior Court Department on September 20, 2005.

A pretrial motion to suppress evidence was heard by *Paul A.*

*Chernoff,* J., and the cases were tried before *Wendie I. Gershengorn,* J.

*Charles K. Stephenson* for the defendant.

*Susanne R. Bines,* Assistant District Attorney (*John C. Verner,* Assistant District Attorney, with her) for the Commonwealth.

McHUGH, J. On March 26, 2007, a jury found the defendant, Kevin Robinson, guilty of two counts of murder in the second degree, one count of arson of a dwelling, and one count of causing injury to a firefighter. The convictions stem from a fire that destroyed a Cambridge apartment building, in the process killing two of the building's occupants. In appealing the convictions, the defendant points to a series of alleged errors in the conduct of the trial and in the trial judge's instructions, all of which are discussed below. None of the alleged errors warrants reversal, and we affirm.

*Background.* In brief, the evidence permitted the jury to find that on August 6, 2005, at approximately 12:00 P.M., a fire broke out on the second floor of a three-story apartment building located at 17 Warren Street in Cambridge. Although the fire was eventually extinguished, the building suffered heavy damage, and the fire claimed the lives of Regina and Benita Antoine, who lived on the third floor and were unable to escape the blaze. A cause and origin expert determined that the fire was intentionally set, and gasoline residue was found on the floor where the fire started.

The defendant, who was in the vicinity when the fire broke out and, in fact, told firefighters precisely where it had started, gave police inconsistent statements regarding his whereabouts before and during the fire. He had an ongoing, bitter feud with the building's landlord, and laboratory tests found gasoline residue on the clothing he wore on the day of the fire. In the days leading up to the fire, he made several statements indicating that he planned to wreak some sort of havoc on the building, and just minutes before the fire broke out, he took a piece of paper from his wallet and asked his girlfriend, who was a tenant in the building, for a lighter, which she provided.

Ultimately, the defendant was arrested and charged with the crimes listed at the outset of this opinion. After denial of his motion to suppress statements he made to police, he was tried and convicted. On appeal, he urges that the statements should

have been suppressed and that the trial judge failed to conduct an individual voir dire, gave flawed instructions regarding second-degree murder, and gave an improper instruction regarding the principles set out in *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-448 (2004). We treat those claims in that order.[1]

*Discussion.* a. *The statements.* After the fire, State police and Cambridge police investigators interviewed the defendant on three occasions. The first two interviews took place on August 6, 2005, and although the arson investigation had begun to focus on the defendant by that time, he was not detained after the interviews concluded. The final interview took place on August 10, 2005, at a Cambridge police station. At the request of investigators, the defendant voluntarily accompanied them to that interview after questioning began elsewhere.

Upon his arrival at the police station, the defendant complained of an upset stomach, but when offered medical assistance, he declined and said that he simply needed to catch his breath. The formal interview started at approximately 8:15 P.M. and ended at approximately 1:00 A.M., although little communication occurred after 11:10 P.M., and nothing the defendant said after that hour was introduced at trial. As the interview began, the officers informed the defendant of his Miranda rights and of his "right" to have the interview recorded.[2] The defendant signed a Miranda waiver form but declined a recording.

---

[1]The defendant also claims that the trial judge abused her discretion by prohibiting defense counsel's impeachment of a prosecution witness named Albano through use of Albano's convictions of malicious destruction of property and of breaking and entering. The decision to admit or exclude prior criminal convictions for impeachment purposes rests in the sound discretion of the trial judge, and in exercising that discretion, the judge must consider both the probative value of the evidence and the danger of unfair prejudice attendant on its admission. See *Commonwealth* v. *Paulding*, 438 Mass. 1, 12 (2002). The excluded convictions arose from a confrontation Albano had with his former girlfriend after she told him to leave her house. At trial the defendant argued that Albano had actually started the Warren Street fire and had motive to do so because he had a grudge against one of the tenants. Thus, there was a risk that the jury would use Albano's prior convictions not for impeachment purposes but to infer that he, not the defendant, had started the fire. Accordingly, the judge, who allowed use of other convictions to impeach Albano, did not abuse her discretion by excluding these convictions. See *Commonwealth* v. *Feroli*, 407 Mass. 405, 408 (1990) ("[A] danger of unfair prejudice exists if a prior conviction is substantially similar to the crime being tried").

[2]Individuals questioned by police manifestly have the power or ability to

At about 10:20 P.M., after several hours of questioning, the defendant asked the officers if he could leave. The officers, who had obtained a warrant for the defendant's arrest before the interview began but had not informed him of the warrant's existence, said that he could not leave and then arrested him.

Against that backdrop, the defendant claims that his Miranda waiver was invalid because police failed to tell him before questioning began that they had obtained the warrant. However, after considering the totality of the circumstances, see *Commonwealth v. Edwards*, 420 Mass. 666, 670 (1995), the motion judge found that the defendant made the statements freely and voluntarily and that he had freely waived his Miranda rights. That "finding . . . is given substantial deference," *Commonwealth v. Auclair*, 444 Mass. 348, 353 (2005), and we see no basis for upsetting it here.

The defendant, who had had become familiar with police procedures as a result of thirty different bookings over a twenty-five-year period, was orally advised of his Miranda rights and signed a Miranda waiver. Although he initially indicated that his stomach hurt, he declined proffered medical attention. While the interview was in progress, officers gave the defendant several opportunities to stretch, smoke a cigarette, drink water, and take antacids and aspirin for his stomach. The defendant made all the statements admitted at trial during the first three hours of what turned out to be a four-and-three-quarter-hour interview. After being informed that he was under arrest, he continued to speak to the interrogators for another forty minutes.

---

refuse to speak unless the interrogators turn off a recording device. That power, however, is not the equivalent of an exclusive right designed solely to protect the interviewee. See generally Hohfeld, Some Fundamental Legal Conceptions as Applied to Legal Reasoning, 23 Yale L.J. 16, 28-32 (1913-1914). Instead, recorded interviews are designed to enhance the evidentiary accuracy of what was said by all participants in the interview, thereby safeguarding in equal measure the interests of the defendant, the prosecution, and the society at large. See *Commonwealth v. DiGiambattista*, 442 Mass. at 446. For that reason, a cautionary instruction "is appropriate for any custodial interrogation, or interrogation conducted in a place of detention, without regard to the alleged reasons for not recording that interrogation. It is of course permissible for the prosecution to address any reasons or justifications that would explain why no recording was made, leaving it to the jury to assess what weight they should give to the lack of a recording. The mere presence of such reasons or justifications, however, does not obviate the need for the cautionary instruction." (Footnote omitted.) *Id.* at 448-449.

Insofar as the arrest warrant is concerned, there is no "require-ment that police officers must advise a defendant that he is charged with a crime or that he is suspect before a valid [Mir-anda] waiver may be obtained." *Commonwealth* v. *Amazeen,* 375 Mass. 73, 78 (1978). See *Commonwealth* v. *Raymond,* 424 Mass. 382, 393 (1997), citing *Amazeen, supra* ("Our cases do not require that a defendant must have information regarding the crime about which he will be questioned or about police suspicions before making a valid waiver of his Miranda rights").

The defendant's assertion that withholding arrest information could lead to police manipulation of the six-hour "safe harbor" rule described in *Commonwealth* v. *Rosario,* 422 Mass. 48, 50, 56-57 (1996), or of the right to make a telephone call embodied in G. L. c. 276, § 33A, raises the specter of a danger that we are prepared to address in appropriate cases. The danger does not exist here. As just stated, the entire interview lasted four and three-quarter hours, but only statements the defendant made dur-ing the first three hours were used at trial. As for the telephone, the defendant's right is triggered by "formal arrest, not by the custodial nature of any prearrest interrogation." *Commonwealth* v. *Hampton,* 457 Mass. 152, 155 (2010), citing *Commonwealth* v. *Rivera,* 441 Mass. 358, 374-375 (2004). An arrest does not occur until, among other things, a defendant understands that he is detained. *Commonwealth* v. *Hampton, supra* at 158. For the defendant, that understanding came at approximately 10:20 P.M., and police thereafter assisted him in tracking down his girlfriend so that he could speak to her on the telephone.[3]

b. *Voir dire.* The defendant next claims that the judge abused

---

[3]The motion judge rightly criticized police use during the interview of a "Morton's Fork" confession form which read as follows:

"I, _____, set the fire at 17 Warren Street in Cambridge, MA that killed two people. The fire happened on Saturday August 06, 2005.

"A. I did not mean for anyone to die or get hurt

"B. I meant to kill people

"C. I'm sorry

"X _____        _____
                          Date"

But as the judge noted, the defendant refused to sign the form, and that

her discretion by refusing to conduct an individual voir dire concerning the jurors' attitudes on race. The trial judge declined to conduct an individual voir dire after stating that she

> "had a chance to reflect on [the request], and in light of the nature of the allegations in this case, the anticipated evidence as well as the standard questions I will be asking, based on all that, I think my initial reaction was correct and this is not — there is nothing racial about this case and so I'm not going to ask specific questions addressing particular prejudices . . . ."

If there is a substantial risk that extraneous issues might influence the jurors, a judge must conduct individual voir dire. See G. L. c. 234, § 28; *Commonwealth* v. *Ashman*, 430 Mass. 736, 739 (2000). On request, individual voir dire regarding racial bias is required in cases of interracial killings, interracial rape, and sexual offenses against children committed by defendants of a different race. *Commonwealth* v. *Lopes*, 440 Mass. 731, 737 (2004). None of those circumstances was present in this case. Although the victims of the fire were Haitian and the defendant identifies himself as black, there is no indication that racial or ethnic differences played any role in the case.

Accordingly, the defendant was entitled to individual voir dire of jurors only if he showed "some [other] basis for finding that there exist[ed] a substantial risk of extraneous influences on the jury," and the judge enjoyed broad discretion in determining "whether [such] a foundation had been established." *Commonwealth* v. *Boyer*, 400 Mass. 52, 55 (1987). The defendant's contention that he is black and the jury pool was predominately white did not establish the requisite foundation. In a case like this one, which involves no overtly racial issues, a substantial risk of extraneous influence does not arise from speculation that an all-white jury will be influenced by racial bias. Cf. *Commonwealth* v. *Pina*, 430 Mass. 66, 74 (1999) ("That some members of the Cape Cod community might, in the abstract, consider Cape Verdeans 'black' does not, without more, suggest any such substantial

---

refusal could be viewed as underscoring the voluntariness of statements the defendant did make. In any event, as the defendant concedes in his brief, his refusal to sign the form rendered moot claims that police use of the form might otherwise have produced.

risk"). Accordingly, the judge did not abuse her discretion by refusing the defendant's request for an individual voir dire of jurors.

c. *The murder instruction.* The judge instructed the jury that they could find the defendant guilty of second-degree murder if the Commonwealth proved beyond a reasonable doubt that the defendant committed an unlawful killing either with malice aforethought or in the commission of an inherently dangerous felony punishable by a maximum sentence of less than life imprisonment. The judge wisely utilized a verdict slip that required the jury to specify the theory of any murder verdict they returned, and the jurors indicated on that slip that they found the defendant guilty on a theory of malice and felony-murder.

The defendant claims that the judge's malice instructions were improper because the evidence was sufficient to support only third prong malice and the judge instructed on all three prongs.[4] The point, though, is moot because when a jury reports that they have based their conviction on both of two alternative theories and there is sufficient evidence to support one of the two, the conviction stands even if there was insufficient evidence to support a conviction on the other. See *Commonwealth* v. *Candelario*, 446 Mass. 847, 859-860 (2006).

d. *The* DiGiambattista *instruction.* The defendant's final claim of error is that the judge failed to give a proper *DiGiambattista* instruction. In *Commonwealth* v. *DiGiambattista*, 442 Mass. at 447-448, the Supreme Judicial Court stated as follows:

> "[W]hen the prosecution introduces evidence of a defendant's confession or statement that is the product of a custodial interrogation or an interrogation conducted at a place of detention (e.g., a police station), and there is not at least an audiotape recording of the complete interrogation, the defendant is entitled (on request) to a jury instruction advising that the State's highest court has expressed a preference that such interrogations be recorded whenever practicable, and cautioning the jury that, because of the absence of any recording of the interrogation in the case

---

[4] The judge instructed the jury that they could find malice aforethought if the defendant (1) intended to cause death; (2) intended to cause grievous bodily harm; or (3) intended to do an act which a reasonable person would know created a plain and strong likelihood of death.

before them, they should weigh evidence of the defendant's alleged statement with great caution and care. Where voluntariness is a live issue and the humane practice instruction[5] is given, the jury should also be advised that the absence of a recording permits (but does not compel) them to conclude that the Commonwealth has failed to prove voluntariness beyond a reasonable doubt."

Here, the trial judge gave the following instruction:

> "The state's highest court . . . has expressed a preference that interrogation in a police statement being [*sic*] recorded whenever practicable. Whether it was practicable to record . . . [the] August 10th interrogation or not is up to you to decide.
>
> "It is also solely up to you to assess what significance you should give the lack of recording. You may consider whether or not the defendant indicated that he wished to discuss the events, but not be recorded, but in any event, if an interrogation takes place in a police station and that statement has not been recorded, our highest court has suggested that because of the absence of any recording, you should weigh the evidence of the defendant's alleged statement with great caution and care."

The defendant claims that the quoted instruction manifests two errors: first, that the judge failed to tell the jury "that the absence of a recording permits (but does not compel) them to conclude that the Commonwealth has failed to prove voluntariness beyond a reasonable doubt"; and second, that the judge did tell the jury to consider whether the defendant expressed a wish not to be recorded. On the present record, neither claim is persuasive.

The omitted portion of the instruction is not required unless "voluntariness is a live issue *and* the humane practice instruction is given" (emphasis added). *DiGiambattista,* 442 Mass. at

---

[5]"Under the Commonwealth's 'humane practice,' if the voluntariness of a defendant's statement is a live issue at trial, the judge must instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement was made voluntarily and that the jurors must disregard the statement unless the Commonwealth has met its burden." *Commonwealth* v. *Cryer,* 426 Mass. 562, 571 (1998).

448. Although the humane practice instruction was given in this case, it does not appear from the transcript that the defendant sought it or that the voluntariness of the defendant's statements to police, as opposed to the voluntariness of his Miranda waiver, had been a live issue at any stage of the proceeding. Moreover, there was no objection to the absence of the instruction, and given the powerful evidence that the defendant had set the fire, we see no substantial risk of a miscarriage of justice from the judge's omission. See *Commonwealth* v. *Drummond,* 76 Mass. App. Ct. 625, 627-628 (2010).

Second, the judge's statement that "[y]ou may consider whether or not the defendant indicated that he wished to . . . not be recorded" did produce an objection, but there was no error. The judge immediately followed that phrase with the unconditional statement that "in any event, if an interrogation takes place in a police station and that statement has not been recorded, our highest court has suggested that because of the absence of any recording, you should weigh the evidence of the defendant's alleged statement with great caution and care." The unconditional nature of that instruction hews to the lines laid out in *DiGiambattista* and distinguishes this case from *Commonwealth* v. *Drummond, supra* at 628-629, where the "[trial] judge told the jurors that they only needed to consider the [*DiGiambattista*] instruction if they found that the defendant . . . 'did not decline the recording.' " Moreover, as we said in *Drummond,* "[p]articular reasons why an interrogation was not recorded are for the jury to weigh when they consider, after hearing the instruction, evidence of what the Commonwealth contends the defendant said to police." *Id.* at 629. See note 2, *supra.* The judge's instruction, therefore, simply invited the jury's attention to a factor they were entitled to consider, while leaving intact the instruction's cautionary force.

*Judgments affirmed.*